**Harold J. KRIEG, Petitioner,**

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, a New Jersey corporation, Respondent.**

**Cheryl L. ADAMS, Petitioner,**

v.

**SAFECO INSURANCE COMPANY, Respondent.**

**Nos. 83SC208, 83SC433.**

Supreme Court of Colorado, En Banc.

Aug. 20, 1984.

Moyer, Beal and Vranesic, John R. Vranesic, Lakewood, for Petitioner Krieg.

Hall & Evans, Robert M. Steiert, Denver, for respondent Prudential.

Harden, Schmidt & Hass, P.C., Ralph B. Harden, Fort Collins, for petitioner Adams.

Fischer & Wilmarth, Steven G. Francis, Fort Collins, for respondent Safeco Ins.

QUINN, Justice.

We granted certiorari to review two lower court judgments concerning the construction of section 10–4–706(1)(d)(I) of the Colorado Auto Accident Reparations Act (No Fault Act), §§ 10–4–701 to 723, 4 C.R.S. (1973 & 1983 Supp.), which authorizes the payment of personal injury protection (PIP) benefits for loss of income "during a period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks." In one of the cases, *Krieg v. Prudential Property & Casualty Insurance Co.* (No. 83SC208), the Denver Superior Court construed the phrase "fifty-two additional weeks" to mean fifty-two consecutive weeks commencing the day after the accident. In the other case, *Adams v. Safeco Insurance Co.* (No. 83SC433), the court of appeals adopted a similar construction, holding that the eligibility period for loss of income benefits is fifty-two consecutive weeks that begin to run the day after the accident. *Adams v. Safeco Insurance Co.,* 674 P.2d 999 (Colo. App.1983). Because both cases raise the identical issue, we consolidate them and affirm the judgments.

## I.

On March 5, 1980, Harold J. Krieg was involved in an automobile accident and suffered a broken femur requiring the placement of an intermedullary rod in his leg. Krieg was insured under a policy with Prudential Property and Casualty Insurance Company (Prudential) for PIP coverage. The policy provided, in pertinent part, that Prudential would "pay, in accordance with [the Colorado No Fault Act], personal injury protection benefits for ... work loss ... incurred with respect to bodily injury ... caused by an accident arising out of the use or operation of a motor vehicle as a motor vehicle." The terms of the policy expressly limited Prudential's liability for PIP work loss benefits as follows:

"the maximum amount payable for *work loss* is one hundred percent (100%) of the first one hundred twenty-five dollars ($125) of loss of gross income per week (or pro rata for such amounts for a lesser period) and shall be payable only during a period commencing the day after the date of the accident, and not exceeding fifty-two weeks (52) from such day."

As a result of his injury, Krieg, whose gross income was in excess of $125 per week, was unable to work for a period of twenty-two weeks following the accident. Prudential paid Krieg all of his lost income benefits between March 5, 1980, and March 5, 1981. On June 19, 1981, however, more than fifty-two weeks after the accident, Krieg underwent surgery for the removal of the rod and was unable to work for an additional seven weeks. Prudential refused to pay Krieg for lost income benefits for the seven weeks of work loss following the June 1981 surgery. Krieg filed an action against Prudential in the Denver County Court, which entered judgment in Krieg's favor for $875 for lost income benefits, plus costs, attorney fees, and interest. The Denver Superior Court reversed the judgment, and this court thereafter granted Krieg's petition for certiorari.[1]

In the companion case, Cheryl L. Adams was injured in an automobile accident on December 13, 1975, while riding as a pas-

---

1. We also granted certiorari to consider the validity of that part of the county court judgment which awarded attorney fees and interest to Krieg. Section 10–4–708(1), 4 C.R.S. (1973), states, in pertinent part, as follows:

"In the event that the insurer fails to pay [PIP] benefits when due, the person entitled to such benefits may bring an action in contract to recover the same. In the event the insurer is required by such action to pay any overdue benefits, the insurer shall, in addition to the benefits paid, be required to pay the reason-

able attorney fees incurred by the other party. The insurer shall pay interest on the benefits which were in controversy at a rate of eighteen percent per annum, with interest commencing from the date the benefits in controversy were due."

Because we conclude that the Denver Superior Court properly determined that Krieg was not entitled to benefits under the No Fault Act, we need not address the issues relating to attorney fees and interest.

senger in a car operated by Gaylene Hergenreder who had PIP insurance coverage with Safeco Insurance Company (Safeco). Adams, who also was earning in excess of $125 per week, lost seven weeks of work during the first year after the accident and an additional 18.21 weeks subsequent to the expiration of the initial fifty-two week period. Adams filed a claim with Safeco for payment of lost income benefits of $125 for 25.21 weeks or a total of $3,151.25. Safeco paid Adams $875 for the seven weeks of income loss during the first year after the accident, but refused to pay her benefits for the 18.21 weeks of work missed after the expiration of the initial fifty-two week period. Adams filed an action against Safeco for the additional benefits in the Larimer County District Court. The district court ruled in favor of Safeco and the court of appeals affirmed.[2] Adams then filed a petition for certiorari, which we granted.

Krieg and Adams argue that the statutory phrase "not exceeding fifty-two additional weeks" in section 10–4–706(1)(d)(I) of the No Fault Act requires mandatory PIP lost income coverage for an aggregate period of fifty-two weeks irrespective of when the loss occurs. Prudential and Safeco, in contrast, contend that the phrase "not exceeding fifty-two additional weeks" means a singular and continuous unit of time commencing on the day of the accident and terminating fifty-two weeks thereafter.

## II.

Because the issue before us is one of statutory construction, a review of the statutory scheme applicable to the claims in question will provide a helpful context for our analysis of the particular provision in controversy.

The basic purpose of the No Fault Act is "to avoid inadequate compensation to victims of automobile accidents" by requiring owners of motor vehicles "to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles." § 10–4–702, 4 C.R.S. (1973); *see Cingoranelli v. St. Paul Fire & Marine Insurance Co.*, 658 P.2d 863 (Colo.1983); *Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976). Section 10–4–706(1), in keeping with this purpose, requires the insurance agreement to provide the following minimum PIP benefits for a single accident victim without regard to fault: compensation up to $25,000 for medical care and treatment rendered "within three years after the accident," § 10–4–706(1)(b); compensation up to $25,000 for rehabilitative care and treatment rendered within five years after the accident, § 10–4–706(1)(c)(II); payment of benefits equivalent to 100% of the first $125 of income loss during a period commencing the day after the accident and not exceeding fifty-two additional weeks, § 10–4–706(1)(d)(I); and payment of expenses not exceeding fifteen dollars per day for essential services in lieu of those the injured party would have performed during the period "commencing the day after the date of the accident and not exceeding an additional fifty-two weeks," § 10–4–706(1)(d)(I).[3] These PIP benefits extend to the insured, household relatives

---

**2.** Adams' claim against Safeco was tried on a written stipulation of facts. Although the actual PIP provisions of Safeco's insurance contract with Hergenreder were not included in the stipulation, the written stipulation did provide in pertinent part as follows:

"That, on December 13, 1975, Defendant [Safeco] provided certain insurance benefits to said Gaylene Hergenreder pursuant to Defendant's insurance policy R 935463.

"That the Defendant's insurance policy provided benefits to Plaintiff [Adams] as described by C.R.S. 1973, 10–4–706(1)(d)(I)."

**3.** At the time the injuries were sustained in this case, section 10–4–706(1)(a) established a minimum legal liability coverage of $15,000 for any one person in any one accident, $30,000 for all persons in any one accident, and $5,000 property damage in any one accident. In 1983 the legislature amended this subsection by increasing the minimum legal liability coverage limits to $25,000 for any one person in any one accident, $50,000 for all persons in any one accident, and $15,000 for property damage. § 10–4–706(1)(a), 4 C.R.S. (1983 Supp.). Also, in 1984 the legislature increased the minimum coverage for medical expenses recoverable under section 10–4–706(1)(b) to $50,000 within a five

of the insured, anyone occupying the vehicle with the insured's consent, and pedestrians. § 10–4–707(1), 4 C.R.S. (1973). The No Fault Act vests those third party accident victims to whom PIP benefits are payable with third party beneficiary status, thereby creating a direct contractual action against the PIP insurer. *Cingoranelli*, 658 P.2d at 867, 868 n. 8.

The statutory PIP benefits represent only minimum protections that an insurer must provide. Nothing in the No Fault Act, in other words, prohibits an insurer from expanding PIP coverage. With respect to lost income benefits, section 10–4–710(2)(a)(II) expressly requires an insurer to offer customers the option of accepting more extensive coverage than the statutory minimum provided in section 10–4–706(1)(d)(I):

> "(2)(a) Every insurer shall offer for inclusion in a complying policy, in addition to the coverages described in section 10–4–706, at the option of the named insured:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "(II) Payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had he not been injured during the period commencing on the date of the accident."

The No Fault Act limits tort actions by accident victims against any person legally responsible for the accident to specified situations involving injuries of a serious nature. Section 10–4–714(1), 4 C.R.S. (1973), for example, permits a tort action against a person legally responsible for a

year period and increased the rehabilitation coverage under section 10–4–706(1)(c)(II) to $50,000 within five years. Ch. 303, sec. 5, § 10–4–706, 1984 Colo.Sess.Laws 1067, 1071–72. This 1984 legislation also amended subsection 10–4–706(1)(d)(I) to increase the lost income coverage as follows:

> "(d)(I) Payment of benefits equivalent to one hundred percent of the first one hundred twenty-five dollars of loss of gross income per week, seventy percent of the next one hundred twenty-five dollars of loss of gross income per week, and sixty percent of any loss of gross income per week in excess thereof, with the total benefit under this subparagraph

motor vehicle accident only when the accident results in one of the following: death; dismemberment; permanent disability; permanent disfigurement; medical and rehabilitative expenses in excess of $500; and loss of earnings and loss of earning capacity extending beyond the fifty-two week period provided in section 10–4–706(1)(d)(I) and not compensated by an applicable complying policy. Section 10–4–714(2), 4 C.R.S. (1973), states that nothing in the Act "shall be construed to preclude recovery in such action against an alleged tort-feasor of benefits provided or economic loss recoverable in excess of the minimum coverages required in section 10–4–706(1)(b) to (1)(d)."

### III.

Having outlined the general framework of the No Fault Act, we turn to the particular issue before us. The statutory context in which the phrase "not exceeding fifty-two additional weeks" appears is section 10–4–706(1)(d)(I), which states as follows:

> "Required coverages. (1) Subject to the limitations and exclusions authorized by this [Act], the minimum coverages required for compliance with this [Act] are as follows:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "(d)(I) Payment of benefits equivalent to one hundred percent of the first one hundred twenty-five dollars of loss of gross income per week, or pro rata for such amounts for a lesser period, from work the injured person would have performed had he not been injured during a period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks ...."

(I) not exceeding four hundred dollars per week, from work the injured person would have performed had he not been injured during the period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks. In addition payment shall be provided for expenses not exceeding twenty-five dollars per day which are reasonably incurred for essential services in lieu of those the injured person would have performed without income during the period commencing the day after the date of the accident and not exceeding fifty-two additional weeks."

Standing by itself, the phrase "not exceeding fifty-two additional weeks" could arguably be read to mean either an aggregate of fifty-two weeks lost income benefits irrespective of when the loss occurs, as advocated by Krieg and Adams, or a singular and continuous term of fifty-two weeks commencing on the day after the accident and terminating fifty-two weeks thereafter, as urged by Prudential and Safeco. The ambiguous terminology must be analyzed in its immediate textual context and with regard to the consequences of any particular construction on the object sought to be achieved by the entire statutory scheme. § 2–4–203(1)(a) and (e), 1B C.R.S. (1980); 2A *Sutherland Statutory Construction* §§ 47.01–47.02 (C. Sands 4th ed. 1973). Only in this way can we arrive at a construction that harmonizes a particular provision with the statutory whole. *See, e.g., Mountain Mobile Mix, Inc. v. Gifford*, 660 P.2d 883 (Colo.1983); *Cingoranelli*, 658 P.2d 863; *Marquez v. Prudential Property & Casualty Insurance Co.*, 620 P.2d 29 (Colo.1980); *Travelers Indemnity Co.*, 191 Colo. 278, 552 P.2d 300. It must be presumed, after all, that the General Assembly intended the entire No Fault Act to be effective. § 2–4–201(1)(b), 1B C.R.S. (1980).

Focusing our attention on the immediate statutory context of section 10–4–706(1)(d)(I), it is quite apparent that the phrase "not exceeding fifty-two additional weeks" refers to the preceding prepositional phrase "during a period." The antecedent "during a period" is modified by two immediately following phrases, the first of which indicates when the period begins, *i.e.*, "commencing the day after the date of the accident," and the second of which describes a specified duration of time during which the insured may experience a loss of income compensable under the Act, *i.e.*, "not exceeding fifty-two additional weeks." The statutory context of the ambiguous phrase "not exceeding fifty-two

additional weeks" clearly shows that this phrase refers to the length of time during which the mandatory minimum coverage for loss of income is applicable. When considered in this contextual framework, the phrase "not exceeding fifty-two additional weeks" must be understood to establish an outer limit to the statutory duration during which lost income benefits may accrue. The alternative construction urged by Krieg and Adams—the phrase "not exceeding fifty-two additional weeks" means the aggregate amount of benefits payable without regard to the time of accrual—would totally eliminate any significance to the antecedent phrase "during a period." If the legislature intended to make a total of fifty-two weeks of income loss benefits payable at any time in the future, we are hard put to find any reason whatever for including the words "during a period" in the statute. We therefore construe "not exceeding fifty-two additional weeks" to mean a singular and continuous period of time commencing the day after the accident and terminating fifty-two weeks thereafter.

Our construction of section 10–4–706(1)(d)(I) comports with the purpose of the No Fault Act, which is to avoid inadequate compensation to victims of automobile accidents by creating minimum coverages for discrete losses over a fixed and determinate period of time. Subsections 10–4–706(1)(b) and (1)(c) manifest this purpose. Both subsections set maximum time limits of three and five years respectively during which an insured may incur compensable medical expenses and rehabilitation costs for which the minimum coverages are applicable. Section 10–4–706(1)(d)(I), by explicitly delineating a fixed period of fifty-two weeks commencing the day after the accident, establishes a comparable maximum time limit within which lost income benefits must accrue. Without such limitation, insurers would face the prospect of liability in perpetuity for work loss benefits. We find nothing in the statutory scheme supportive of such a construction.[4]

---

4. We note that the insurance commissioner's interpretation of section 10–4–706(1)(d)(I) is in accord with the construction we adopt in this opinion. An administrative interpretation of a statute by an official responsible for its enforcement, while not conclusive of the statute's meaning, is nonetheless an appropriate factor to

The construction we herein adopt is not at variance with the beneficent purposes of the No Fault Act. Section 10–4–710(2)(a)(II) requires all insurers to offer more expansive coverage for lost income benefits than that provided by section 10–4–706(1)(d)(I). If an insured refuses this coverage and an accident victim subsequently incurs lost income after the expiration of the fifty-two week period next following the accident, section 10–4–714(1)(f) specifically authorizes a tort action to recover "[l]oss of earnings and loss of earning capacity extending beyond the fifty-two week period provided in section 10–4–706(1)(d) and not compensated by an applicable complying policy." Thus, the General Assembly has left those persons who suffer lost income after the expiration of the fifty-two week period with a legal remedy to recover their losses.

In summary, we conclude that section 10–4–706(1)(d)(I) of the No Fault Act does not provide PIP coverage to Krieg and Adams for lost income benefits for work loss occurring subsequent to the expiration of that period of time commencing the day after the accident and terminating fifty-two weeks thereafter. The judgments are accordingly affirmed.

consider in statutory construction. § 2–4–203(1)(f), 1B C.R.S. (1980). The commissioner of insurance has authority to establish reasonable rules and regulations necessary to carry out his duties under the laws of the state of Colorado. § 10–1–109, 4 C.R.S. (1973). One of those duties is the execution of laws relating to insurance. § 10–1–103(1), 4 C.R.S. (1973); *see Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 281, 552 P.2d 300, 302 (1976). The insurance commissioner, subsequent to the enactment of the No Fault Act, promulgated Rule 74–20, 3 C.C.R. 702–3 at 37–38 (1979), which states, in relevant part, as follows:

"A. The following are the minimum coverages required in any complying policy:

\*  \*  \*  \*  \*  \*

"4. Payments of benefits equivalent to 100% of the first $125 of loss of gross income per week, or pro rata for such amounts for a lesser period, from work the injured person would have performed had he not been injured. These benefits commence the day after the date of the accident and continue as needed for 52 consecutive weeks."