**Edna GLENN, Plaintiff,**

**v.**

**FARMERS AND MERCHANTS INSURANCE COMPANY, Tri-State Insurance Company, Midwestern Insurance Company, a/k/a Collectively the Silvey Companies, Defendants.**

**Civ. No. 85–5113.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Dec. 22, 1986.

Jeff Slaton, Springdale, Ark., for plaintiff.

James M. Roy, Jr., Roy & Lambert, Springdale, Ark., for defendants.

**MEMORANDUM OPINION**

H. FRANKLIN WATERS, Chief Judge.

**Discussion**

In this case, plaintiff, Edna Glenn, sued the defendant insurance carriers seeking substantial damages because of the insurance carriers' failure to pay her certain

income disability benefits which she believes are due her under the provisions of the so-called Arkansas no-fault insurance provisions (Ark.Stat.Ann. § 66–4014). The suit was initially filed by Ms. Glenn as a class action in which she sought to sue for all others similarly situated.

The facts necessary for a determination of the issues pending in this matter are not substantially in dispute. Ms. Glenn purchased an automobile insurance policy from Farmers and Merchants Insurance Company, one of the members of The Silvey Group. Among other things, the policy included income disability benefits required and prescribed by Ark.Stat.Ann. § 66–4014(b).

That provision of Arkansas law requires that: "Every automobile liability insurance policy covering any private passenger motor vehicle issued or delivered in this state shall provide minimum medical and hospital benefits, income disability and accidental death benefits, under policy provisions and on forms approved by the Commissioner of Insurance...." In relation to income disability benefits, the statute provides:

(b) INCOME DISABILITY BENEFITS. Seventy percent (70%) of the loss of income from work during a period commencing eight (8) days after the date of the accident, and not to exceed fifty-two (52) weeks, but subject to a maximum of $140 per week....

In compliance with this statute, the insurance policy provided work-loss benefit coverage for work loss "incurred during a period commencing eight (8) days after the day of the accident and not to exceed fifty-two (52) weeks."

On January 27, 1984, plaintiff was involved in an automobile accident, and it is admitted that the policy was in full force and effect at the time. She missed no work as a result of the accident until October 15, 1984, when she had knee surgery. As a result of the surgery and the time necessary for recuperation, Ms. Glenn was off work from October 15, 1984, through January 20, 1985, and was paid a total of $1,960.00 for fourteen (14) weeks at $140 per week (the wage rate agreed to be correct).

Ms. Glenn then returned to work and there was no further claim until she began to miss work in April of 1985 due to back problems. She saw Dr. Jim Arnold, a specialist, and after x-raying her back, he determined that there was a possible back injury, i.e., a nerve root irritation, and advised that plaintiff could not work for a period of time.

The plaintiff, through her attorney, then made a claim for additional wage loss. In a discussion with the insurance adjuster for The Silvey Companies, her attorney was told that it was the opinion of the adjuster that the claim would not be paid because the insurance carrier interpreted the policy provisions as prescribed by the Arkansas law to provide for wage losses incurred during a period of fifty-two (52) weeks after the date of the accident.

Plaintiff's attorney then made a written demand to the insurance carrier on June 20, 1985, and by letter dated June 18, 1985, an employee of the insurance carrier advised Ms. Glenn's attorney that the claim would not be paid because "we interpret the phrase '... incurred during a period commencing eight (8) days after the accident and not to exceed fifty-two (52) weeks,' to be a time loss limitation on work loss benefits beginning eight (8) days after the date of accident and extending for fifty-two (52) weeks from that date."

Plaintiff then filed what her attorney denominated a "class action." In the complaint, as amended, plaintiff sued in behalf of herself for the work-loss benefits that she believed to be due and sought twelve percent (12%) penalty and attorney's fees authorized by Ark.Stat.Ann. § 66–3238.

It is also alleged that the defendants have interpreted the policy provisions in a similar manner in relation to claims made by other Arkansas residents, and plaintiff seeks to collect consequential damages for each of the class members in the amount of $20,000.00.

Plaintiff's complaint, as amended, also seeks damages for intentional infliction of emotional distress in the amount of $100,-000.00 for herself and $20,000.00 for each class member; damages of $100,000.00 for herself and $20,000.00 for each class member for defendants' "bad faith"; and $10,-000,000.00 for herself and each of the class members as punitive damages.

During the pretrial phases of this case, it became "troublesome" to say the least. Many discovery disputes arose, most of which, in the court's view, were unwarranted and unnecessary. As Mr. Jeff Slaton, plaintiff's attorney, attempted to discover the facts necessary to support a class action, he only received information which should have indicated to him that there was no basis for the class action allegations to be maintained. Instead, he became suspicious of the information he was receiving, and, without much basis in the court's view, did not seem to believe anything that he was receiving or anyone involved in the case. This contributed to long, drawn-out and bitter discovery disputes, the likes of which this court abhors.

Finally, after numerous extensions of the time to move for class certification as required by Rule 24 of the Rules of the Eastern and Western Districts of Arkansas, Mr. Slaton advised the court, by letter dated May 21, 1986, that:

"After consultation with my client in explaining the current status of the class action aspect of the case, and what time it was felt it would take to obtain class certification, my client requested that the class allegations be withdrawn. Both my client and myself still, in very good faith, believe that a class exists but do not see how with the non-furnishing of the documents by the defendants, we would be able to provide the court with an adequate motion to get such certified."

He asked that the class action allegation be removed from the lawsuit "because at the current time, we have not located enough claims involving the fifty-two (52) week, eight (8) day limitation that would be of a sufficient number for the court to certify a class."

In due course, the defendants filed motions for partial summary judgment seeking a dismissal of the bad faith, intentional infliction of emotional distress, and punitive damage portions of the complaint. Plaintiff then moved for partial summary judgment in relation to the question of the proper interpretation of the provisions of the policy and of Arkansas law. In turn, defendants moved for summary judgment on this aspect of the case.

Shortly before the matter was scheduled to be tried, the court, in a telephone conference call, advised counsel that it intended to grant the motions for summary judgment in relation to the bad faith, intentional infliction of emotional distress, and punitive damage claims, and would further consider the motions filed in behalf of each of the parties in relation to the proper interpretation of the policy provisions.

After fully considering the matter, the court is prepared to rule. As counsel for the parties were advised in the telephone conversation prior to the scheduled trial, the court is fully convinced that there is not now and never was a basis for the bad faith, intentional infliction of emotional distress, or punitive damage claims raised by the plaintiff. As can be seen in the cases on point collected in the footnote below,[1] those kinds of actions are reserved for willful, malicious, wanton, and other out-

---

1. **BAD FAITH:**
   *Aetna Casualty & Surety Co. v. Broadway Arms Corp.,* 281 Ark. 128, 664 S.W.2d 463 (1984); *Givens v. Hixson,* 275 Ark. 370, 631 S.W.2d 263 (1982); *Findley v. Time Ins. Co.,* 264 Ark. 647, 573 S.W.2d 908 (1978).
   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**
   *Orlando v. Alamo,* 646 F.2d 1288 (8th Cir. 1981); *M.B.M. Co. v. Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980); *Olan Mills, Inc. of*

*Texas v. Dodd,* 234 Ark. 495, 353 S.W.2d 22 (1962).
   **PUNITIVE DAMAGES:**
   *Carden v. Evans,* 243 Ark. 233, 419 S.W.2d 295 (1967); *Bridges v. Stephens,* 238 Ark. 801, 384 S.W.2d 490 (1964); *Holmes v. Hollingsworth,* 234 Ark. 347, 352 S.W.2d 96 (1961); *Steward v. Thomas,* 222 Ark. 849, 262 S.W.2d 901 (1953); *Harkrider v. Cox,* 230 Ark. 155, 321 S.W.2d 226 (1959); and *McAllister v. Calhoun,* 212 Ark. 17, 205 S.W.2d 40 (1947).

rageous conduct evidencing hatred, ill will, and a spirit of revenge. As can be seen from a mere reading of the policy provisions which are substantially as prescribed and required by Arkansas law, there is, to say the very least, serious doubt about whether plaintiff's interpretation is correct. In fact, as will be set forth below, the court does not believe that it is.

### Construction Of Insurance Policy Provisions

■ Not only is it not at all clear that defendants' interpretation of the policy provision in question is wrong, the court is persuaded that the insurance carrier has properly interpreted the provision. Plaintiff has argued that this provision is drafted in ambiguous terms and, thus, should be construed in favor of the insured, citing *State Farm Mut. Ins. Co. v. Pennington*, 215 F.Supp. 784 (E.D.Ark.1963), and *Hope Spoke Co. v. Maryland Cas. Co.*, 102 Ark. 1, 143 S.W. 85 (1912).

Of course, the rule in almost every jurisdiction is that where the insurance carrier, unfettered by requirements of law, drafts ambiguous language into its insurance policy, the policy will be liberally interpreted in favor of the insured and against the party drafting it. *See* the discussion and cases cited from many jurisdictions at 43 Am. Jur.2d *Insurance* § 283. However, that rule does not answer the question of how this policy should be interpreted. The relevant Arkansas statute does not give the insurance carrier any other option but to provide the income disability benefits coverage specifically prescribed by Ark.Stat. Ann. § 66–4015. The language used in the policy, with the exception of a missing comma which does not appear to affect the interpretation, is taken verbatim from the Arkansas statute. This was undoubtedly done because the statute requires that this coverage be provided.

Since Arkansas law requires and prescribes certain coverage "under policy provisions and on forms approved by the Commissioner of Insurance," why should either party be favored in construing the policy provisions? A number of courts when faced with this question have held that

neither should. *Midwest Triangle Paint Works, Inc. v. Firemen's Ins. Co.*, 36 Ill. App.2d 65, 183 N.E.2d 562 (1962); *Goldman v. Piedmont Fire Ins. Co.*, 198 F.2d 712 (3rd Cir.1952); *MacBey v. Hartford Acci. & Indem. Co.*, 292 Mass. 105, 197 N.E. 516 (1935); *Rosenthal v. Insurance Co. of North America*, 158 Wis. 550, 149 N.W. 155 (1914); *Dahrooge v. Rochester-German Ins. Co.*, 177 Mich. 442, 143 N.W. 608 (1913); *St. Landry Wholesale Mercantile Co. v. New Hampshire Fire Ins. Co.*, 114 La. 146, 38 So. 87 (1905).

Since the coverage and, in effect, the policy provisions are dictated by Arkansas law, the court believes that the better course for it to pursue in deciding this question is to attempt to determine from the statute the legislative intent in making the requirements. Plaintiff contends that the language "and not to exceed fifty-two (52) weeks" is an economic limitation, not a time limitation. In other words, it is plaintiff's contention that, irrespective of when the loss is incurred, she may recover until she has been paid for fifty-two (52) weeks. In short, her argument, followed to its logical conclusion, would be that the insurance carrier's liability for work-loss benefits never ends, at least not before her death. Her accident occurred on January 27, 1984, and she was paid benefits which were incurred within fifty-two (52) weeks after that date. She now wants to be paid additional benefits for wage losses incurred in April of 1985, and argues that this interpretation is not only the correct one, but the only one that the insurance carrier could make in good faith. Her argument is, in effect, that if she does not receive fifty-two (52) weeks of payment prior to that time, if she goes to a doctor or chiropractor in the year 2000 and is told that her problems are a result of the accident way back in 1984, the insurance carrier will still be liable. The court simply does not believe that the Arkansas legislature could have intended such a result.

In the interpretation of statutes, the legislative will is the important and controlling factor. *See* cases cited at 73 Am.Jur.2d *Statutes* § 145. It is axiomatic that, be-

fore resorting to the myriad of statutory construction rules, the court should attempt to determine what the words used mean when given their plain meaning. In this statute, the Arkansas legislature dictated that insurance carriers provide income disability benefits for "loss of income from work during a period commencing eight (8) days after the date of the accident, and not to exceed fifty-two (52) weeks...." What does that mean? It says that the period shall commence eight (8) days after the date of the accident but, if plaintiff's argument is followed, it never ends. It commences at a prescribed time, but continues indefinitely. The court simply believes that the legislature intended for it to commence eight (8) days after the accident and end fifty-two (52) weeks later, and believes that is the plain meaning of these words.

In attempting to determine the intent of the General Assembly, it is helpful to realize that Ark.Stat.Ann. § 66–4014 was enacted by the Arkansas legislature in 1973 as Act No. 138. It has been called "no-fault" insurance and it is said that it was enacted to "... make an insured whole on relatively minor automobile injury damage claims without regard to fault or liability without his being required to engage in expensive and extended litigation." *Aetna Ins. Co. v. Smith*, 263 Ark. 849, 854, 568 S.W.2d 11 (1978). The provisions which have been annotated in Ark.Stat.Ann. § 66–4014 contain three subparagraphs, each of which provide a distinct type of benefit. Subparagraph (a) provides medical and hospital benefits; subparagraph (b), the one under discussion, provides income disability benefits; and subparagraph (c) provides accidental death benefits. The provision covering medical and hospital benefits (subparagraph (a)), clearly has a time limitation. It provides reimbursement for reasonable and necessary medical expenses "incurred within twenty-four (24) months after the automobile accident." Subparagraph (c) provides $5,000 death benefits should injury from an accident "cause death within one (1) year from the date of the accident." Thus, if plaintiff's argument is accepted, subparagraph (b) is

the only provision of the "no-fault" insurance coverages required by the Arkansas legislature which does not have a time limitation. In short, plaintiff's argument is that, sandwiched between subparagraphs (a) and (c), which clearly provide a time limitation, is subparagraph (b) which has none. The legislature, in the court's view, did not intend that.

If statutory construction rules are resorted to, the court believes that the rule that says that sections of an act *in pari materia* should be construed together and compared with each other is applicable. *Investment Company Institute v. Camp*, 274 F.Supp. 624 (D.D.C.1967); *McCaa Chevrolet Co. v. Bounds, Admr.*, 207 Ark. 1043, 183 S.W.2d 932 (1944). As the Arkansas Supreme Court said in *McCaa, supra*, at 1046, 183 S.W.2d 932:

> In ascertaining the intention of the legislature recourse may be had to the entire act under consideration. "The different parts of a statute reflect light upon each other ... Hence, a statute should be construed in its entirety, and as a whole ... The intention of the lawmaker is to be deduced from a view of every material part of the statute."

The rule is explained in 73 Am.Jur.2d *Statutes* § 187, as follows:

> Sections and acts in pari materia, and all parts thereof, should be construed together and compared with each other. (citing cases) Because the object of the rule is to ascertain and carry into effect the legislative intent, it proceeds upon the supposition that the several statutes were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions. (citing cases) Under this rule, each statute or section is construed in the light of, with reference to, or in connection with, other statutes or sections. (citing cases)

That rule is directly applicable to the "no-fault" act adopted by the legislature in 1973. It is obvious from subparagraphs (a) and (c) that the legislature did not intend the liability imposed upon insurance carri-

ers to be "open-ended." Instead, the legislature intended that the liability end in the time set forth in the statute. As the rule discussed above indicates, this court should assume that the three subsections of Ark. Stat.Ann. § 66–4014 were intended to be consistent and harmonious. It is not logical to assume that the General Assembly intended for an insurance carrier to be liable for medical and hospital benefits for only twenty-four (24) months after an accident and to be liable for accidental death benefits for one (1) year from the accident, but to be responsible to the insured to pay work-loss benefits for an indeterminate period of time, depending only upon the cumulative time that the insured is off work.

The Arkansas Workers' Compensation Law, Ark.Stat.Ann. § 81–1301 *et seq.*, shows that when the Arkansas legislature intended to provide for an economic limitation rather than a time limitation, they knew how to do it. Ark.Stat.Ann. § 81–1310 provides that benefits payable under the act "shall be paid for a period of not to exceed four hundred fifty (450) weeks of disability." However, even though the workers' compensation statute is clearly remedial social legislation, it is not, by any means, open-ended. Ark.Stat.Ann. § 81–1318 provides that an injured worker's claim "shall be barred unless filed with the Commission within two (2) years from the date of the injury."

The court is convinced that the statute in question and, thus, the policy in question, does not impose liability upon the insurance carrier for work loss incurred more than fifty-two (52) weeks after the accident. The motion for summary judgment of the defendants will be granted.

### Rule 11 Sanctions

■ Defendants have moved that sanctions be imposed against the plaintiff and her attorney under the provisions of Rule 11 of the Federal Rules of Civil Procedure. That rule, as amended in 1983, provides:

The signature of an attorney or party constitutes a certificate by him that he has the read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The rule goes on to provide that where a party or attorney violates the rule the court "*shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." (emphasis supplied.)

Defendants contend that making class action allegations in the complaint and by pursuing those claims long after plaintiff and her attorney should have known that there was no basis for them, constitutes misconduct proscribed by the rule. In addition, it is contended that the bad faith, intentional infliction of emotional distress, and punitive damage claims were frivolous on their face, and that the court should impose sanction against plaintiff and her attorney for making and pursuing these claims.

In the court's view, a very valid purpose is served by these provisions of Rule 11 and the court is convinced that provisions such as these were long overdue. Federal courts, including this one, have been literally swamped by lawsuits which, in times past, would have, at most, been state court actions. Many disputes irrespective of the amount really in controversy end up in federal court where there is diversity. This is because many plaintiffs allege bad faith, intentional infliction of emotional distress, or punitive damage claims and, thus, attain the necessary jurisdictional amount. This court has in the past and will continue to impose sanctions where justified and warranted.

The court is mindful of the care with which trial courts must utilize this new tool to discourage frivolous litigation in the federal courts. The Advisory Committee has cautioned trial courts that they should not chill counsel's enthusiasm or creativity by imposition of the sanctions of the rule unless justified.

The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.[2]

However, the drafters of the rule explained in the Advisory Committee Note that the amendment requires at least some measure of inquiry into both the facts and law before a paper is filed.

In this case, the court frankly believes that the provisions of the Arkansas "no-fault" law in question are not completely clear. The court cannot say that the interpretation made by Ms. Glenn and her lawyer are totally unwarranted although, as indicated above, the court believes that that interpretation is not the correct one. Likewise, the court cannot say that Mr. Slaton's belief was totally groundless that, if the insurance carrier had denied his client benefits on the grounds announced, surely they must have denied numerous other Arkansas residents benefits on the same rationale. Thus, it is not clear enough to this court that Mr. Slaton should not have included class action claims in his complaint to justify the severe sanctions authorized by Rule 11 and requested by the defendants.

The court has considerably more difficulty in refraining from imposing Rule 11 sanctions in this case against Mr. Slaton because of the almost paranoid approach that he took to discovery in the case. It appears that when he could turn up no basis for legitimately claiming that there was a sufficient class to be represented in a class action, he took the position that everyone around must be "lying," and as a result, numerous discovery disputes arose, most if not all of which were unwarranted. Under the circumstances, he probably attempted to pursue the class action allegations long after it should have become apparent that there was no legitimate basis for doing so. Even after he decided that he could not develop enough information to seek certification of a class, he blamed, not the lack of facts, but others around him. In his letter to the court dated May 21, 1986, he advised that he was dropping his claim, not because discovery had failed to turn up sufficient persons to be represented, but, instead, because he had not been able to get the defendants to cooperate in discovery and, at least by implication, that the court had declined to make them cooperate.

The maintenance of the bad faith, intentional infliction of emotional distress, and punitive damage claims are even more troublesome to the court. As indicated above, the court cannot say that the interpretation of plaintiff and her attorney of the provisions of the insurance policy and applicable state statute are so unfounded and unwarranted as to indicate that the contention was advanced in bad faith, but the court believes that no fairminded person could in good faith believe that anyone who declined to accept plaintiff's interpretation was acting in bad faith and with a malicious intent. All that plaintiff's attorney had to do in order to determine what a "hard row he had to hoe" in establishing these causes of action was to read some or all of the cases cited in footnote one above, cases which even a reasonably competent

2. See the Advisory Committee Note to the 1983 amendments, which is reprinted at 97 F.R.D. 165, 199 (1983).

attorney should have had no difficulty finding. For example, the mere reading of the *Broadway Arms* case, *supra*, would have disclosed that, before a successful tort of bad faith can be made, it must be shown that the insurance carrier engaged in affirmative misconduct without a good faith defense, and "that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy. Such a claim cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer." The Arkansas Supreme Court in that case went on to say that "actual malice is that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge."

In this case, all that the plaintiff had was defendants' refusal to pay an insurance claim pursuant to policy provisions imposed by statute which plaintiff and her attorney claim are ambiguous and should be construed against the carrier. As the court said in *Findley v. Time Ins. Co., supra,* in quoting with approval from a Kansas court: "Mere refusal to pay insurance cannot constitute wanton or malicious conduct when, as here, an actual controversy exists with respect to liability on the policy."

Similarly, in order for plaintiff's attorney to, in good faith, believe that he could make a case of intentional infliction of emotional distress, he would have to believe, in good faith, that the trier of fact could find that the insurance carrier's conduct in interpreting the provision of the policy and law as it did constituted extreme and outrageous conduct as that term was defined by Justice Fogleman in *M.B.M. Co. v. Counce, supra,* as follows: "By extreme and outrageous conduct, we mean conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." If plaintiff's attorney read this case, it is difficult for the court to believe that he, in good faith, believed that what he claimed the insurance carrier did in this case constituted such outrageous conduct. After all, all that the insurance

carrier did was to decline to pay a claim based on its interpretation of provisions of law and the policy which even plaintiff claims are ambiguous.

The punitive damage claim requires plaintiff to meet an equally difficult test. Arkansas Model Jury Instruction 2217 correctly sets forth the law in Arkansas in this respect as announced in cases such as those cited in footnote one above. Before a defendant can be liable for punitive damages, it must be proved that he "knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred."

In view of the above, the court is convinced that Mr. Slaton should not have alleged and should not have pursued the bad faith, intentional infliction of emotional distress, and punitive damage claims in this case when the facts at his disposal, and the law which he could have learned with minimal effort clearly did not justify these claims being made and pursued.

In view of this, the court believes that Rule 11 gives it no alternative but to impose sanctions. The rule says that, where the court finds that the provisions of the rule have not been complied with, the court "shall," not "may," impose sanctions. The question then becomes what sanctions are appropriate in this case. As already indicated, the court cannot say with sufficient certainty to impose sanctions under Rule 11 that plaintiff's interpretation of the policy provisions and statute are so unwarranted as to show a lack of good faith. Likewise, the court cannot say that the class action allegations were not made in good faith, at least initially, and, for that reason, this court would probably have had jurisdiction of this matter even without the bad faith, intentional infliction of emotional stress, and punitive damage claims. Thus, it appears that the only attorney's fees and other expenses of litigation which were enhanced by the conduct of plaintiff's attorney which the court has found to be in

violation of Rule 11 are those which are incident to defendants' defense of the bad faith, intentional infliction of emotional distress, and punitive damage claims. Since it appears that it would have been necessary for defendants to have done most of the discovery that they did, even absent these claims, the court does not believe that discovery expenses have been materially increased by these claims. Pursuant to Rule 11, the court will allow the defendants to recover those costs and expenses, including attorney's fees, which defendants can show were incurred in moving for and obtaining the summary judgment on those claims. Defendants will have **seven (7) days from the date of the judgment** to be entered contemporaneously herewith to show, by affidavit or other appropriate means, these costs and expenses. Plaintiff's attorney will have **seven (7) days from receipt of such proof** to respond. Any costs and expenses assessed will be assessed against Mr. Slaton, not plaintiff.

A separate judgment in accord with the above will be entered contemporaneously herewith.