**Kenneth W. LARSEN, Plaintiff and Appellant,**

**v.**

**ALLSTATE INSURANCE CO., Defendant and Appellee.**

No. 920334–CA.

Court of Appeals of Utah.

July 13, 1993.

Certiorari Denied Oct. 8, 1993.

---

Brent O. Hatch, Salt Lake City, for plaintiff and appellant.

Michael P. Zaccheo, Salt Lake City, for defendant and appellee.

Before BENCH, ORME and RUSSON, JJ.

RUSSON, Associate Presiding Judge:

Kenneth W. Larsen appeals from the trial court's entry of summary judgment in favor of Allstate Insurance Company (Allstate). We affirm in part, and reverse and remand in part.

## FACTS

The material facts in this case are undisputed. On October 29, 1989, Larsen's vehicle was struck by another vehicle. At the time of the accident, Larsen was insured by Allstate.

Following the accident, Larsen was able to return to work. However, in May 1990, Larsen began to experience severe back complications arising from the accident, and since that time, has been unable to return to work, or even participate in routine duties around his house.

Consequently, Larsen sought to recover from Allstate fifty-two weeks of lost income benefits, under Utah Code Ann. § 31A–22–307(1)(b)(i) (Supp.1992) of Utah's no-fault automobile insurance statute, which provides for certain minimum personal injury protection benefits, and states that coverage must provide for "the lesser of $250 per week or 85% of any loss of gross income and loss of earning capacity per person from inability to work, for a maximum of 52 consecutive weeks after the loss. . . ." Larsen asserted that under section 31A–22–307(1)(b)(i), he was entitled to fifty-two consecutive weeks of coverage from the date he first incurred lost income as a result of the accident. Allstate paid for twenty-two weeks of lost income, but denied the remainder of Larsen's claim, responding that the fifty-two consecutive week period ran from the date of the accident.

On July 2, 1991, Larsen filed this action against Allstate,[1] claiming breach of contract and bad faith failure to make payments under an insurance contract. On August 14, Allstate moved to dismiss Larsen's claims against it, and on September 4, Larsen filed a motion for partial summary judgment against Allstate. The trial court, treating Allstate's motion as a motion for summary judgment, heard oral argument on both motions. The court subsequently denied Larsen's motion and granted Allstate's motion, dismissing Larsen's claims against Allstate based on its conclusion that the fifty-two consecutive week period provided for under section 31A–22–307(1)(b)(i) runs from the date of the accident, and not from the date that the insured first incurs lost income as a result of the accident.

Larsen appeals, claiming that the trial court erred in: (1) granting Allstate's motion for summary judgment and denying his motion for partial summary judgment on the basis of its conclusion that coverage under section 31A–22–307(1)(b)(i) runs from the date of the accident, rather than the date that the insured first loses income as a result of the said accident; and (2) dismissing his claim for bad faith failure to make payments under an insurance contract.

## COVERAGE UNDER NO-FAULT STATUTE

■ "Summary judgment is proper in cases where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Co-*

---

1. Larsen also filed actions against the driver of the car that struck him and the owner of the said vehicle. However, as this is before us on certification under Utah Rule of Civil Procedure 54(b) of Larsen's claims against Allstate, neither are parties to this appeal.

*babe v. Stanger*, 844 P.2d 298, 300–01 (Utah 1992) (citing Utah R.Civ.P. 56(c); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1039 (Utah 1991)). "On appeal, we accord no deference to the trial court's conclusions of law, but review them for correctness." *Id.* (citing *Clover*, 808 P.2d at 1040). Since the trial court's interpretation of a statute involves a question of law, such interpretation is also reviewed for correctness. *Lounsbury v. Capel*, 836 P.2d 188, 192 (Utah App.), *cert. denied*, 843 P.2d 1042 (Utah 1992); *accord Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990).

Utah Code Ann. § 31A–22–307 (Supp. 1992) provides, in pertinent part:

> (1) Personal injury protection coverages and benefits include:

> . . . . .

> (b)(i) the lesser of $250 per week or 85% of any loss of gross income and loss of earning capacity per person from inability to work, for a maximum of 52 consecutive weeks after the loss, except that this benefit need not be paid for the first three days of disability, unless the disability continues for longer than two consecutive weeks after the date of injury....

■ "When statutory language is plain and unambiguous, we do not look beyond the same to divine legislative intent." *Hatton–Ward v. Salt Lake City Corp.*, 828 P.2d 1071, 1072 (Utah App.1992) (citing *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989); *State v. Singh*, 819 P.2d 356, 359 (Utah App.1991), *cert. denied*, 832 P.2d 476 (Utah 1992)), *cert. denied*, 843 P.2d 1042 (Utah 1992); *accord Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988). "Rather, we construe a statute according to its plain language." *Hatton–Ward*, 828 P.2d at 1072 (citing *Brinkerhoff*, 779 P.2d at 686); *accord Allisen*,

763 P.2d at 809. "Specifically, we will not interpret unambiguous language in a statute to contradict its plain meaning." *Hatton–Ward*, 828 P.2d at 1072 (citing *Bonham v. Morgan*, 788 P.2d 497, 500 (Utah 1989) (per curiam); *Johnson v. Utah State Retirement Bd.*, 770 P.2d 93, 95 (Utah 1988)).

■ Section 31A–22–307 provides coverage for "the lesser of $250 per week or 85% *of any loss of gross income and loss of earning capacity* per person from inability to work, for a maximum of 52 consecutive weeks *after the loss....*" Utah Code Ann. § 31A–22–307(1)(b)(i) (Supp.1992) (emphasis added). According to the plain language of that section, the fifty-two consecutive week period runs from the loss of gross income and loss of earning capacity, not from the date of the accident. Under the undisputed facts of this case, Larsen did not begin to suffer loss of income and loss of earning capacity until May 1990. Moreover, according to the undisputed facts, he continued to suffer that loss for a period exceeding the maximum benefit of fifty-two weeks. Thus, the trial court erred in concluding that the language of section 31A–22–307 only provided for coverage for fifty-two weeks following the date of the accident and in granting summary judgment in favor of Allstate on that basis of that conclusion.[2]

Allstate argues that summary judgment is nonetheless proper under precedents from two other states, citing *Glenn v. Farmers & Merchants Ins. Co.*, 649 F.Supp. 1447 (W.D.Ark.1986) and *Krieg v. Prudential Property & Casualty Ins. Co.*, 686 P.2d 1331 (Colo.1984). We disagree. In *Glenn*, the court held that the insurance company was not liable for income disability payments for loss of income that occurred more than fifty-two weeks after the accident in that case. *Glenn*, 649 F.Supp.

---

2. Additionally, Allstate argues that we should consider the language of Larsen's insurance policy with Allstate to determine the date at which the fifty-two consecutive week provision begins. The policy provides, in pertinent part:

> Allstate will pay to or on behalf of an injured person ... loss of income and loss of earning capacity by the injured person during his lifetime from inability to work during a period commencing three days after the date of the *bodily injury* and continuing for a maximum of 52 consecutive weeks.

However, because section 31A–22–307 mandates the minimum coverage that an insurance company must provide, *see* 31A–22–302 (1991), such argument plainly fails.

at 1448–52. However, unlike the case at bar, the Arkansas no-fault statute specifically provides for coverage for "[s]eventy percent (70%) of the loss of income from work during a period commencing eight (8) days *after the date of the accident....*" *Id.* at 1448 (quoting Ark.Stat.Ann. § 66–4014(b)) (emphasis added). Likewise, in *Krieg*, the Colorado Supreme Court ruled in favor of the insurance company, stating that Colorado's no-fault statute's provision for fifty-two weeks of coverage ran from the day after the date of the accident. *Krieg*, 686 P.2d at 1332–36. However, similar to the statute in *Glenn*, and unlike the statute in the case at bar, Colorado's no-fault statute provides for coverage "during a period commencing *the day after the date of the accident,* and not exceeding fifty-two additional weeks...." *Id.* at 1334 (quoting 4 Colo.Rev.Stat. § 10–4–706(1)(d)(I) (Supp.1983)) (emphasis added). As noted above, the Utah no-fault statute provides for coverage "for a maximum of 52 consecutive weeks *after the loss.*" Utah Code Ann. § 31A–22–307(1)(b)(i) (Supp.1992) (emphasis added). Thus, both cases cited by Allstate are readily distinguishable.[3]

### BAD FAITH

Larsen claims that the trial court erred in dismissing his claim for bad faith failure to make payments under an insurance contract. Allstate responds that under the circumstances of this case, the court properly determined that such claim should be dismissed. We agree.

 It is well settled that an insurer is entitled to challenge its obligations under an insurance contract as long as such claim is "fairly debatable." *Callioux v. Progressive Ins. Co.,* 745 P.2d 838, 842 (Utah App. 1987); *accord Hill v. State Farm Mut. Auto. Ins. Co.,* 829 P.2d 142, 147 (Utah App.1992). Moreover, "[w]hen a claim is fairly debatable, the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Callioux,* 745 P.2d

at 842 (quoting *McLaughlin v. Alabama Farm Bureau Mut. Casualty Ins. Co.,* 437 So.2d 86, 90 (Ala.1983)). The reason for such rule is plain:

> It would not comport with our ideas of either law or justice to prevent any party who entertains bona fide questions about his legal obligations from seeking adjudication thereon in the courts.

*Id.* (quoting *Western Casualty & Sur. Co. v. Marchant,* 615 P.2d 423, 427 (Utah 1980)); *accord Hill,* 829 P.2d at 147.

 Applying the foregoing law to the facts of this case, we conclude that as a matter of law Allstate's position was "fairly debatable," and therefore, Larsen's claim for bad faith failure to make payments under an insurance contract must fail. First, Allstate did not simply arrive at such position arbitrarily, but instead sought the opinion of its legal counsel on the question of whether coverage under Utah's no-fault law begins to run on the date of injury or the date that loss is first experienced. Second, there are cases from other jurisdictions that tenably support Allstate's position. *See Glenn v. Farmers & Merchants Ins. Co.,* 649 F.Supp. 1447 (W.D. Ark.1986); *Krieg v. Prudential Property & Casualty Ins. Co.,* 686 P.2d 1331 (Colo.1984). Third, as noted above, there are policy considerations that weigh in favor of Allstate's position. Lastly, we cannot overlook the fact that the trial court agreed with Allstate's interpretation, and granted summary judgment on that basis. All of these factors lead to the conclusion that Allstate's position was "fairly debatable." Accordingly, we conclude that the trial court did not err in dismissing Larsen's claim for bad faith failure to make payments under an insurance contract.

### CONCLUSION

Accordingly, the trial court's order granting Allstate's motion for summary judgment and denying Larsen's motion for partial summary judgment is reversed and

---

**3.** Lastly, Allstate raises several policy considerations in favor of interpreting the fifty-two week period in section 31A–22–307 as running from the date of the accident, not the date of actual loss. However, since it is the judiciary's duty to interpret the law as the legislature has enacted it, not to rewrite the law as it sees fit, such arguments are better saved for the legislature.

remanded with instructions to enter partial summary judgment for Larsen. The trial court's order dismissing Larsen's claim for bad faith failure to make payments under an insurance contract is affirmed.

BENCH and ORME, JJ., concur.