**A.I. TRANSPORT, a Division of The Insurance Company of the State of Pennsylvania, a Pennsylvania insurance corporation, Interpleader Plaintiff,**

v.

**IMPERIAL PREMIUM FINANCE, INC., a Delaware corporation, Norton Senn Corporation, a Nebraska corporation and Eastern Flatbed Systems, Inc., a Utah corporation, Defendants.**

Civ. No. 92–C–1010G.

United States District Court,
D. Utah,
Central Division.

Aug. 4, 1994.

Randall N. Skanchy and Scott D. Cheney of Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, for plaintiff.

Mark A. Larsen of Campbell Maack & Sessions, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION AND ORDER IN RE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

J. THOMAS GREENE, District Judge.

This matter came before the Court on July 6, 1994, on interpleader plaintiff A.I. Transport's ("AIT") Motion for Summary Judgment against interpleader defendants' Norton Senn Corporation and Eastern Flatbed Systems, Inc. (hereinafter "defendants") Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing. AIT was represented by Randall N. Skanchy and Scott D. Cheney of Jones, Waldo, Holbrook & McDonough. Defendants were represented by Mark A. Larsen of Campbell Maack & Sessions.

The Court took AIT's motion under advisement. After considering the oral argument, pleadings and memoranda on file, the Court renders its Memorandum Decision and Order.

### FACTUAL BACKGROUND

Defendants purchased from AIT a trucker's liability policy and a cargo liability policy. Imperial Premium Finance, Inc. ("Impe-

rial"), a non-moving defendant in this interpleader action, financed the premiums for both policies. Later, when defendants failed to make the required payments, Imperial cancelled the policies. Because cancellation occurred prior to expiration of the policies, AIT refunded the unearned portion of premiums paid by Imperial. AIT then instituted this interpleader action because of uncertainty as to who is entitled to receive the refunded premiums. Defendants counterclaimed asserting, among other claims, breach of the implied covenant of good faith and fair dealing.[1] Defendants claim entitlement to a refund greater than that calculated by AIT, and that AIT's failure to remit the funds as required under the insurance contracts constitutes a breach of the implied covenant of good faith and fair dealing.

## ANALYSIS

The crux of the dispute has to do with whether in the event of policy cancellation the "Minimum Premiums" amount set forth as one of the Declarations in the Trucker's Liability Policy constitutes the base amount from which the pro rata earned premium must be deducted in arriving at the refundable unearned premium.

Defendants claim that the "Minimum Premiums" amount was not agreed upon or even discussed during negotiations which resulted in bind over coverage for about four months prior to receipt by defendants of the policies in question.[2] Defendants acknowledge that the agreed upon premium for the Trucker's Liability Policy was $1,050,000, an estimated amount computed by multiplying defendants' estimated annual gross receipts by a fixed percentage. This amount is set forth in Item Seven of the policy Declarations in the final policy which was issued, but directly under

that "Total Premiums" figure the same amount of $1,050,000 also is set forth as "Minimum Premiums." Defendants claim that a "Minimum Premiums" amount was never bargained for. The "Premium Audit" provision of the Truckers Liability Policy[3] upon which defendants rely, provides as follows:

The *estimated premium* for this Coverage Form is based on the exposures you told us you have when this policy began. We will compute the *final premium* due when we determine your actual exposures. The *estimated total premium* will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. *If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.*

Policy at Section V, B, 6 (page 9–12) (emphasis added).

AIT asserts that the aforesaid "Premium Audit" clause must be read together with the "Minimum Premiums" amount in computing the refund. The position of AIT is that the contract is clear and unambiguous and that the two provisions when read together must be interpreted to mean that defendants are entitled to a refund only of the difference between the "Minimum Premiums" and the pro rata earned premiums.

I. *The Implied Covenant of Good Faith and Fair Dealing*

The Tenth Circuit Court of Appeals has observed that "[t]he purpose of the good faith doctrine in contract law is to protect the reasonable expectations of the parties by 'implying terms in the agreement.'" *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1267 (10th Cir.1988).[4] The Su-

---

1. At a hearing before the Court on March 11, 1994, the Court denied summary judgment as to defendants' breach of contract claim, reserved judgment on their claim for breach of the implied covenant of good faith and fair dealing, and granted summary judgment against defendants on all other claims.

2. Defendants claim that they did not receive the policies until late 1991; coverage was bound on August 15, 1991.

3. The Cargo Policy does not contain an audit premium provision, although it does contain a minimum premium amount.

4. The Tenth Circuit explained in *Big Horn:* "The mere recitation of an express power does not in itself preclude the implication of good faith requirements. To say that every expressly conferred contractual power removes all the parties' unexpressed—but reasonable—expectations, would virtually read the doctrine of good faith (or of implied contractual obligations and limita-

preme Court of Utah has declared that the implied covenant of good faith and fair dealing inheres in most, if not all, contractual relationships. *Beck v. Farmers Ins. Exchange,* 701 P.2d 795, 798 (Utah 1985). Under the covenant of good faith and fair dealing, each party impliedly promises that he or she will not intentionally or purposely do anything to destroy or injure the other party's right to receive the fruits of the contract. *Bastian v. Cedar Hills Investment and Land Co.,* 632 P.2d 818, 821 (Utah 1981).

It is axiomatic that an implied term cannot contradict an express contract term. *Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033, 1044 (Utah 1989) (implied-in-fact promise cannot contradict written contract term). In this regard, the implied covenant of good faith and fair dealing may not be construed to imply "new, independent rights or duties not agreed upon by the parties." *Brehany v. Nordstrom,* 812 P.2d 49, 55 (Utah 1991). Where an express term establishes a right or power to be exercised in the sole discretion of one party, in Utah that right or power must be exercised consistent with the covenant of good faith.[5]

In determining whether the implied covenant of good faith and fair dealing has been breached, the Utah Supreme Court has stated the following:

An examination of express contract terms alone is insufficient to determine whether there has been a breach of the implied covenant of good faith and fair dealing. To comply with his obligation to perform a contract in good faith, **a party's actions must be consistent with the agreed common purpose and the justified expectations of the other party.** The purpose, intentions, and expectations of the parties should be determined by considering **the contract language and the course of dealings between and conduct of the parties.**

*St. Benedict's Development Co. v. St. Benedict's Hospital,* 811 P.2d 194, 200 (Utah 1991) (emphasis added). Thus it is the parties' agreed common purpose and justified expectations that are critical in determining whether the implied covenant of good faith and fair dealing has been breached.[6] A party's expectations can be justified only when grounded in the language of the contract, the course of dealing between the parties, and/or the parties' conduct.

II. *The Implied Covenant of Good Faith and Fair Dealing Doe Not Apply in This Case*

This court previously has refused to enter summary judgment on defendants' express contract claim as set forth in their Counterclaim. In this regard, the court determined that questions of fact preclude summary judgment, particularly with reference to the original negotiations for insurance coverage, as well as the circumstances under which the apparently inconsistent "Minimum Premiums" amount was inserted in the Truckers Liability Policy as finally issued. This does not implicate alleged breach of the implied covenant of good faith and fair dealing. If there was a breach of the original insurance coverage agreement by inclusion of

---

tions) out of existence." *Big Horn Coal Co.,* 852 F.2d at 1267.

**5.** The Utah Supreme Court has stated that "courts endeavor to construe contracts so as not to grant one of the parties an absolute and arbitrary right to terminate a contract." *Resource Management Co. v. Weston Ranch & Livestock Co.,* 706 P.2d 1028, 1037 (Utah 1985). In *Resource Management,* the court found a contract granting "sole discretion" to one of the parties did not confer an arbitrary power to avoid obligations under the contract. *Id.* at 1037.

The Tenth Circuit apparently takes a different view as to this matter. In *Big Horn Coal Co., supra* note 1, that court went on to say: "We are convinced that an express power will preclude the requirements of good faith if the power leaves absolute and uncontrolled discretion to exercise the power in one of the parties and if the other party can have no reasonable expectation of any implied protection from the power's exercise other than procedural notice." 852 F.2d at 1267.

**6.** Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectation of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness. Restatement (Second) of Contracts § 205, Comment a (1981).

the "Minimum Premiums" amount in the final policy, defendants would be entitled to enforce the original agreement as a matter of contract law with a remedy in the nature of specific performance of the original agreement or reformation of the final policy. Essentially this same cause of action and relief would emanate from an action based upon an implied covenant of good faith and fair dealing. On the other hand, if there was no breach of the original agreement for coverage by inclusion of a customary provision requiring minimum premiums in the policy as finally issued, there could be no breach of an implied covenant of good faith and fair dealing. Under both alternatives defendants' action for breach of the implied covenant of good faith and fair dealing is subsumed by their breach of contract action.

In any event, the actions of AIT in contacting legal counsel and filing this interpleader action in order to obtain a court ruling relative to ultimate payment of the correct amount due evidences the uncertainty and debatability of the matter. In *Larsen v. Allstate Ins. Co.*, 857 P.2d 263, 266 (Utah App.1993), *cert. denied*, 862 P.2d 1356 (Utah 1993), the Court of Appeals of Utah affirmed the summary dismissal of the plaintiff's claim of bad faith holding that "an insurer is entitled to challenge its obligations under an insurance contract as long as such claim is 'fairly debatable'" and that making such a challenge does not constitute bad faith. *Id.* at 266. Manifestly, the alleged obligation to remit unearned premiums as insisted upon by defendants in this case is "fairly debatable."[7] This court rules that AIT's refusal to refund the unearned premiums pending determination of this matter does not constitute a breach of the implied covenant of good faith and fair dealing.

Based upon the foregoing, it is hereby

ORDERED, that Plaintiff A.I. Transport's motion to dismiss Defendants' Norton Senn Corporation and Eastern Flatbed Systems, Inc. Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing is GRANTED.

---

7. The absence of affirmative representations in the original insurance coverage negotiations concerning "Minimum Premiums" constitutes an additional reason which makes this matter fairly debatable. Defendants maintain that the matter was neither discussed nor mentioned, so no expectation could have emanated from an express promise that no minimum premium would be required.