STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a
corporation, Petitioner,

v.

Donna J. PEIFFER, Respondent.

No. 96SC849.

Supreme Court of Colorado,
En Banc.

March 23, 1998.

Seaman and Giometti, P.C., Gregory R. Giometti, Thomas J. Seaman, Denver, for Petitioner.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Purvis, Gray, Schuetze & Gordon, John A. Purvis, Boulder, for Respondent.

Justice BENDER delivered the Opinion of the Court.

This case involves an action for breach of an automobile insurance contract brought against the petitioner, State Farm, by its insured, respondent Donna Peiffer ("Peiffer"), concerning State Farm's refusal to pay personal injury protection ("PIP") benefits under Peiffer's automobile insurance policy in accordance with the Colorado Auto Accident Reparations Act, section 10–4–701 to – 723, 3 C.R.S (1997) ("No–Fault Act"). We hold that in appropriate circumstances, a trial court may provide a "thin skull" jury instruction in an action for breach of contract for PIP benefits, and we affirm the decision of the court of appeals. We return this case to the court of appeals to remand to the district court for further proceedings.[1]

## I.

On December 24, 1990, Peiffer was injured in an automobile accident when her car was struck by another vehicle. Peiffer was insured under an automobile insurance policy issued by State Farm that included coverage for PIP benefits in accordance with the No–Fault Act. Under the policy, State Farm was responsible for payment of up to $50,000 for medical and rehabilitation treatments that were reasonable, necessary, and causally related to the automobile accident.[2]

After the accident, Peiffer began receiving extensive treatment from multiple health care providers. Although these providers believed that the treatment was necessary, State Farm instructed Peiffer to submit to several independent medical examinations ("IMEs"). In 1991, Peiffer underwent an IME by a chiropractor who indicated that Peiffer should be weaned from chiropractic treatment and massage therapy because they were unnecessary. In 1992, Peiffer underwent an IME by a psychiatrist/neurologist who stated that Peiffer's psychiatric therapy was no longer reasonably related to the accident. Also in 1992, Peiffer submitted to an IME by an orthopedic spine surgeon who found that Peiffer had reached maximum medical improvement. Based on these determinations, State Farm refused to pay for further treatment other than pool therapy.

On June 24, 1993, Peiffer sued State Farm for breach of contract for failure to pay PIP benefits, and for the tort of bad faith breach of an insurance contract. At trial, State Farm called Peiffer as a hostile witness and elicited testimony that during the IMEs, Peiffer failed to inform the examining physicians that she received substantial chiropractic treatment before the accident. State Farm also presented experts who testified

1. The issue was framed on certiorari as follows: Whether the court of appeals erred in holding that a "thin-skull plaintiff" jury instruction was appropriately given to the jury in an action for breach of contract to determine an insurer's obligation to pay no-fault insurance benefits pursuant to section 10–4–706, 3 C.R.S. (1997).

2. Section 10–4–706(1), 3 C.R.S. (1997), provides in pertinent part:

Subject to the limitations and exclusions authorized by this part 7, the minimum coverages required for compliance with this part 7 are as follows:

. . . .

(b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical, chiropractic, optometric, podiatric, hospital, nursing, x-ray, dental, surgical, ambulance, and prosthetic services, and nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing, performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle. . . .

. . . .

(c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.

Although this 1997 version of the statute differs slightly from the one in existence at the time of the accident, the differences are not relevant for purposes of this opinion.

that Peiffer's subjective complaints greatly outweighed her physical injuries, suggesting that her complaints were fabricated. During closing argument, State Farm argued that Peiffer's continued treatment was not necessary because Peiffer's assertions regarding her symptoms were not credible.

Upon Peiffer's request, and over State Farm's objection,[3] the district court gave the jury the following "thin skull" instruction:

> In determining the amount of benefits for which the Defendant, State Farm Mutual Automobile Insurance Company, is responsible to pay, you cannot reduce the amount of or refuse to award any such payments because of any physical frailties or mental condition of the Plaintiff that may have made her more susceptible to injury, disability, or impairment.

The instruction was not limited to Peiffer's tort claim. The jury awarded Peiffer $10,068 for breach of contract and $10,000 for bad faith breach of an insurance contract.

State Farm appealed, arguing that the district court erred by giving the "thin skull" instruction because the "thin skull" doctrine is a tort concept that has no application to claims of breach of contract. The court of appeals rejected State Farm's argument and affirmed the holding of the district court. State Farm then petitioned this court for certiorari review.

### II.

■ The "thin skull" doctrine provides that a negligent defendant is liable for harm resulting from negligent conduct even though the harm was increased by the particular plaintiff's condition at the time of the negligent conduct. *See Schafer v. Hoffman,* 831 P.2d 897, 900 (Colo.1992). In Colorado, it is fundamental that a tortfeasor must accept the victim as the victim is found. *See id.*

[W]hat the defendant could foresee is important in determining whether the defendant was negligent in the first instance, but not at all decisive in determining the extent of the consequences for which, once negligent, the defendant will be liable.

. . . .

. . . There is almost universal agreement upon liability beyond the risk, for quite unforeseeable consequences, when they follow an impact upon the person of the plaintiff.

. . . The defendant of course is liable only for the extent to which the defendant's conduct has resulted in an aggravation of the pre-existing condition, and not for the condition as it was; but as to the aggravation, foreseeability is not a factor.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 43, at 290–92 (5th ed.1984).

We have held that a "thin skull" instruction is appropriate in tort cases when the defendant seeks to avoid or reduce liability by employing a technique known as "spotlighting," in which the defendant calls attention to the plaintiff's pre-existing conditions or predisposition to injury and asserts that the plaintiff's injuries would have been less severe had the plaintiff been an average person. *See Schafer,* 831 P.2d at 900. However, the applicability of the "thin skull" instruction in a contract case for breach of an automobile insurance agreement for no-fault PIP benefits is an issue of first impression for this court. This issue requires us to consider the policies underlying the No–Fault Act.

■ The No–Fault Act governs compensation, including medical and rehabilitation benefits, for personal injuries resulting from automobile accidents regardless of fault. *See Allstate Ins. Co. v. Smith,* 902 P.2d 1386, 1387 (Colo.1995); *Scoggins v. Unigard Ins.*

---

**3.** State Farm objected on the grounds that a tort principle such as the "thin skull" doctrine has no applicability to a contract claim. State Farm now contends that the instruction was also inappropriate because the facts of the case do not merit a "thin skull" instruction. Because State Farm did not did not object on this ground at trial, we decline to address this new argument.

*See* C.R.C.P. 51 (stating that the parties must object to jury instructions prior to submission of the instructions to the jury, and that "[o]nly the grounds so specified shall be considered on . . . appeal or certiorari"); *Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315, 1330–31 (Colo. 1996).

*Co.,* 869 P.2d 202, 203 (Colo.1994). This scheme requires automobile owners to acquire an automobile insurance policy that complies with the minimum amount of coverage mandated by the. No–Fault Act. *See McConnell v. St. Paul Fire & Marine Ins. Co.,* 906 P.2d 109, 112 (Colo.1995). Insurers, in turn, must pay all of the reasonable and necessary medical expenses incurred by the insured in an accident arising out of the use of an automobile, up to the limits of the policy, even if the insured was to blame for the accident. *See Smith,* 902 P.2d at 1388. The legislature articulated the public policy of the No–Fault Act in section 10–4–702, 3 C.R.S. (1997), as follows:

> The general assembly declares that its purpose in enacting this part 7 is to avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles.

In addition, this court has recognized that one of the primary purposes of the No–Fault Act was to decrease the volume of tort litigation arising out of automobile accidents. *See State Farm Mut. Auto. Ins. Co. v. Broadnax,* 827 P.2d 531, 539 (Colo.1992).

■ The No–Fault Act precludes a person injured in a motor vehicle accident from bringing a traditional tort action against another person involved in the accident except under limited statutorily enumerated circumstances. *See* § 10–4–714(1), 3 C.R.S. (1997). However, the No–Fault Act is not a precise substitute for a traditional tort action. *See Allstate Ins. Co. v. Avis Rent–A–Car Sys., Inc.,* 947 P.2d 341, 344 (Colo.1997) (stating that the No–Fault Act replaced parts of the common law tort liability system but that the General Assembly also retained features of pre-existing tort liability law). For example, the Act provides benefits for injured tortfeasors, who would not be eligible to recover damages as a plaintiff in a traditional tort action. In addition, the Act allows a victim who sustains economic losses in excess of a no-fault insurance policy to recover against

the tortfeasor by filing a civil lawsuit. *See* § 10–4–714(2), 3 C.R.S. (1997). The Act serves to maximize, not minimize, insurance coverage. *See Smith,* 902 P.2d at 1387. The No–Fault Act " 'is to be liberally construed to further its remedial and beneficent purposes.' " *Regional Transp. Dist. v. Voss,* 890 P.2d 663, 669 (Colo.1995) (quoting *Travelers Indem. Co. v. Barnes,* 191 Colo. 278, 283, 552 P.2d 300, 304 (1976)).

■ Applying these principles to the facts of this case, we agree with State Farm that the "thin skull" doctrine is a tort concept that generally does not apply to an action for breach of contract. Damages in an action for breach of contract are limited to those contemplated by the parties at the time of the agreement, whereas the "thin skull" doctrine imposes liability for "quite unforeseeable consequences." Keeton et al., *supra,* § 43, at 291. Therefore, a defendant in an action for breach of contract generally should not be held responsible for the unforeseeable consequences of the breach.

However, damages for a breach of contract for PIP benefits are analogous to damages arising from the commission of a tort because an insurance contract for PIP benefits always involves an unforeseeable amount of money. Although the limits of the policy are within the contemplation of the parties, neither the insured nor the insurer can anticipate the precise amount of benefits to which the insured might be entitled were an automobile accident to occur. In addition, unlike a policy for life insurance or health insurance, a policy for PIP benefits due to injury arising out of an automobile accident does not contain exclusions for pre-existing conditions.

■ When an insurer attempts to avoid or reduce liability by "spotlighting" the insured's pre-existing conditions, a thin-skull instruction furthers the No–Fault Act's policy of fully compensating the victim. Thus, in breach of contract cases for PIP benefits, when the trial court finds that the insurer "spotlighted" the victim's pre-existing mental or physical conditions, a "thin skull" instruction may be given. We hold that the district court did not err by instructing the jury in this case that "you cannot reduce the amount

of or refuse to award any such payments because of any physical frailties or mental condition of the Plaintiff that may have made her more susceptible to injury, disability, or impairment." We affirm the decision of the court of appeals, and we return this case to the court of appeals to remand to the district court for further proceedings.