**FARMERS INSURANCE EXCHANGE,**
Petitioner,

v.

**BILL BOOM INCORPORATED,**
**a Colorado corporation,**
**Respondent.**

**MID–CENTURY AUTO COMPANY,**
Petitioner,

v.

**SAFEWAY TRUCKING, INC. and Larry**
**Dean Lincoln, Respondents.**

**AMERICAN FAMILY INSURANCE**
**GROUP, Petitioner,**

v.

**FEDERAL EXPRESS CORPORATION,**
**Respondent.**

**SCHNEIDER NATIONAL CARRIERS,**
**INC., a Nevada corporation, and**
**Robert Westfall, Petitioners,**

v.

**ALLSTATE INSURANCE COMPANY, an**
**Illinois corporation, Respondent.**

Nos. 97SC164, 97SC182, 97SC201, 97SC506.

Supreme Court of Colorado.

June 8, 1998.

White and Steele, P.C., John M. Lebsack, Keith R. Olivera, Denver, for Petitioner, Farmers Insurance Exchange.

Godfrey & Associates, P.C., Brett Marshall Godfrey, Alison Faryl Kyles, Denver, for Respondent, Bill Boom Inc., a Colorado Corp.

Campbell, Latiolais & Ruebel, P.C., Colin C. Campbell, Denver, for Petitioner, Mid–Century Auto Company.

Godfrey & Associates, P.C., Peter Moyson, Brett Marshall Godfrey, Alison Faryl Kyles, Denver, for Respondents, Safeway Trucking, Inc. and Larry Dean Lincoln.

Mary E. Gibbons, Englewood, Colorado, for Petitioner, American Family Insurance Group.

Godfrey & Associates, P.C., Brett Marshall Godfrey, Alison Faryl Kyles, Denver, for Respondent, Federal Express Corporation.

Treece, Alfrey, Musat & Bosworth, P.C., June Baker Laird, Carol Lynn Thomson, Denver, for Petitioners, Schneider National Carriers, Inc., and Robert Westfall.

Walberg & Dagner, P.C., Randall S. Herrick–Stare, Englewood, for Respondent, Allstate Insurance Company, an Illinois corporation.

Berryhill, Cage & North, P.C., Mark W. Williams, Denver, for Amicus Curiae National Association of Independent Insurers.

Levy & Lambdin, P.C., Marc R. Levy, Scott P. Landry, Englewood, for Amicus Curiae State Farm.

Office of the City Attorney, Charles H. Richardson, Julia A. Bannon, for Amicus Curiae City of Aurora.

Colorado Municipal League, David W. Broadwell, Denver, for Amicus Curiae Colorado Municipal League.

Hale Pratt Hackstaff Laitos Green & Tymkovich, P.C., Karen E. Leather, Denver, for Amicus Curiae Colorado Compensation Insurance Authority.

Justice KOURLIS delivered the Opinion of the Court.

## I.

Under the Colorado Auto Accident Reparations Act, sections 10–4–701 to –726, 4A C.R.S. (1994) (No–Fault Act), insurers are generally responsible for the covered benefits owed to insureds involved in an accident, without any opportunity to recover those benefits from the insurer of the other driver. However, the No–Fault Act does provide an exception to the general rule where a motor vehicle accident involves a collision between a private passenger motor vehicle or a public school vehicle and a nonprivate passenger motor vehicle. In that circumstance, the insurer of the private passenger or public school vehicle may seek reimbursement for all benefits paid from the owner, operator or person responsible for the nonprivate passenger motor vehicle.

■ Thus, the cases we address today raise the question of the proper scope of the phrase "nonprivate passenger motor vehicle" in section 10–4–713(2), 4A C.R.S. (1994). The four consolidated cases arise from similar factual scenarios involving collisions between large commercial vehicles and small passenger cars that caused injury to the occupants of the passenger cars. In each case, the insurers who provided coverage on the passenger cars under the No–Fault Act paid personal injury protection (PIP) benefits to their insureds and then sought reimbursement from or subrogation against the owner, user or operator of the commercial vehicle.

In *Farmers Insurance Exchange v. Bill Boom, Inc.,* No. 96CA0320 (Colo.App. Dec. 27, 1996); *Mid–Century Auto Co. v. Safeway Trucking, Inc.,* No. 95CA2034 (Colo.App. Dec. 27, 1996); and *American Family Insurance Group v. Federal Express Corp.,* No. 95CA2197 (Colo.App. Dec. 27, 1996),[1] the

---

1. The factual and procedural posture of *Farmers, Mid–Century,* and *American Family* are as follows. In *Farmers,* Farmers brought an action in Arapahoe County District Court to recover in subrogation PIP benefits paid on behalf of its insured for injuries sustained in a 1992 accident involving a truck owned by Bill Boom, Inc. Farmers asserted that since Bill Boom's truck had a rated load capacity of over 1500 pounds, it did not fall within the definition of "private passenger motor vehicle," and Farmers was therefore entitled to subrogate. Bill Boom moved to dismiss, arguing that nonprivate passenger motor vehicle did not include privately operated commercial vehicles primarily intended to carry cargo. The trial court granted Bill Boom's motion and dismissed the action.

In *Mid Century,* Mid–Century sought to recover PIP benefits paid to the driver of a private passenger car injured in a 1991 accident caused by a commercial freight semi-truck owned by Safeway Trucking. Safeway argued that its truck did not qualify as a nonprivate passenger motor vehicle. The parties filed cross motions for summary judgment on the subrogation issue. The trial court determined that the phrase nonprivate passenger motor vehicle included all vehicles not falling within the definition of private passenger motor vehicles. The court granted Mid–Century's motion and allowed the subrogation claim against Safeway to proceed.

In *American Family,* an American Family insured sustained injuries in a motor vehicle collision with a vehicle owned by Federal Express. American Family pursued subrogation of the PIP

court of appeals disallowed the subrogation claims, relying on *Filippi v. Farmers Insurance Exchange*, 943 P.2d 24 (Colo.App.1996). In *Allstate Insurance Co. v. Schneider National Carriers, Inc.*, 942 P.2d 1352 (Colo. App.1997), a different panel of the court of appeals agreed with Allstate's challenge to the trial court's dismissal of its subrogation claim.[2] We agree with the court of appeals' decision in *Schneider*. We therefore affirm *Schneider* and reverse *Mid–Century* and *American Family* and remand the latter two cases with directions to reinstate the orders of the district courts. We also reverse the court of appeals' decision in *Farmers* and return the case with directions to remand to the district court for reinstatement of the action.

## II.

The stated purpose of the No–Fault Act is

to avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of the ownership and use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles.

§ 10–4–702, 3 C.R.S. (1997). We have previously concluded that the General Assembly intended to allow an insured full tort recovery undiminished by the subrogation and arbitration rights of the insurer, except in those cases where such an intent would result in double recovery to the insured. *See Marquez v. Prudential Property & Cas. Ins. Co.*, 620 P.2d 29, 33 (Colo.1980). Similarly, section 10–4–713(1), 4A C.R.S. (1994), generally prohibits insurers who pay No–Fault benefits from acquiring subrogation rights against tortfeasors. As pertinent here, the statute provides:

Neither any person eligible for direct benefits described in section 10–4–706 nor the insurer providing benefits described in section 10–4–706 shall have any right to recover against the owner, user, or operator of a motor vehicle ... in any action for damages for benefits required to be paid under section 10–4–706. . . .

§ 10–4–713(1), 4A C.R.S. (1994).

Section 10–4–713(2)(a), 4A C.R.S. (1994), contains an exception to the general prohibition against subrogation. In pertinent part, that subsection provides:

(a) Notwithstanding the provisions of subsection (1) of this section, where a motor vehicle accident involves a private passenger motor vehicle ... and a nonprivate passenger motor vehicle, the insurer of the private passenger motor vehicle ... shall have a direct cause of action for all benefits actually paid by such insurer under section 10–4–714 against the owner, user, or operator of the nonprivate passenger motor vehicle. . . .

§ 10–4–713(2)(a), 4A C.R.S. (1994). Thus, the exception applies when a "private passenger motor vehicle" is involved in an accident with a "nonprivate passenger motor vehicle."

The phrase "private passenger motor vehicle" is defined in section 10–4–713(2)(c):

For the purpose of this subsection (2), a "private passenger motor vehicle" means an automobile of the private passenger, station wagon, or camper type not used as a public livery conveyance ... or an automobile of the panel delivery or truck type with a rated load capacity of one thousand five hundred pounds or less.

The phrase "nonprivate passenger motor vehicle" is not defined.

The insurers in these cases argue that the prefix "non" modifies the defined phrase, "private passenger motor vehicle." Under the insurers' suggested construction, the

---

benefits it paid its insured and was awarded reimbursement of those benefits by an intercompany insurance arbitration panel. Federal Express brought an action in Arapahoe County District Court to vacate the arbitration award. The court determined that subrogation against private commercial cargo trucks was allowed and therefore affirmed the arbitration award.

**2.** Allstate paid PIP benefits to its insured injured in a 1993 accident with a tractor-trailer owned by Schneider. Later, it brought a subrogation action to recover those benefits from Schneider. Schneider moved for summary judgment arguing that its vehicle was not a nonprivate passenger motor vehicle. The trial court granted Schneider's motion and dismissed Allstate's claim.

commercial trucks involved in the accidents at issue here are "nonprivate passenger motor vehicles." Thus, the insurers of the injured parties fall within the exception of subsection (2)(a) and can subrogate their insureds' claims against the truck drivers, their companies, and their insurers. However, the other parties contend that the prefix "non" modifies only the single word "private." Under their suggested construction, the trucks are not "nonprivate passenger motor vehicles," and the injured parties' insurers fall within the general subrogation prohibition of subsection (1) such that they may not seek any reimbursement for No–Fault benefits paid to their insureds.

In *Filippi*, the court of appeals found the language of the "nonprivate passenger motor vehicles" provision clear and unambiguous. Thus, it declined to consider extrinsic aids to construction such as the legislative history of the No–Fault Act. The court of appeals read the prefix "non" as modifying only "private" and not the entire phrase "private passenger motor vehicles." *Filippi*, 943 P.2d at 25. Under that interpretation, an accident would have to involve two passenger motor vehicles, one private and one nonprivate, before the insurer could assert subrogation rights. Consequently, in *Filippi*, the court of appeals denied subrogation concluding that "a semi-tractor/trailer owned by a private entity is not included in the phrase 'nonprivate passenger motor vehicle.'" *Id.* at 26.

The court of appeals followed the same reasoning, albeit with respect to different types of vehicles, in *Farmers, Mid–Century* and *American Family*. Hence, in each of those four cases, the "nonprivate passenger motor vehicle" provision was narrowly construed to encompass only governmentally-owned passenger motor vehicles and insurers were disallowed from asserting subrogation claims against the owners, users and operators of commercial vehicles.

In *Schneider*, a different panel of the court of appeals determined that the interpretation of the term "nonprivate passenger motor vehicle" in *Filippi* conflicted with the General Assembly's intent, and therefore declined to follow that decision. *See Schneider*, 942 P.2d at 1355. Specifically, the court in *Schneider*

reasoned that since "private passenger motor vehicle" is a statutorily defined phrase fully contained in the section at issue, "nonprivate passenger motor vehicle" should be construed as the group of vehicles not included within the defined phrase. *See id.* The court of appeals also noted that the statutory definition of "private passenger motor vehicle" was itself divergent from the commonly understood meaning of the phrase because it included not only what would normally be considered passenger vehicles, but also trucks, panel vans and delivery vans, commonly understood to be cargo vehicles. *See id.* Because the definition included both passenger and certain cargo vehicles, the court ultimately concluded that "nonprivate passenger motor vehicle" was intended to be construed within the context of the defined term "private passenger motor vehicle." *See id.*

We agree with the court of appeals in *Schneider* and conclude that "nonprivate passenger motor vehicle" encompasses all motor vehicles not included within the statutory definition of "private passenger motor vehicle."

### III.

#### A.

 In determining the scope of "nonprivate passenger motor vehicle," we begin with the language of the statute itself. In construing statutory provisions, our obligation is not to make policy decisions but rather to give full effect to the legislative intent. *See Colby v. Progressive Cas. Ins. Co.*, 928 P.2d 1298, 1302 (Colo.1996); *Conte v. Meyer*, 882 P.2d 962, 965 (Colo.1994). If the legislative intent is immediately conveyed by the commonly understood and accepted meaning of the statutory language, we need look no further. *See Colby*, 928 P.2d at 1302; *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo.1995).

 However, if the statutory language is ambiguous and therefore susceptible to alternate constructions, we look to principles of statutory construction to ascertain the legislative intent. *See* § 2–4–203(1)(a)–(g), 1

C.R.S. (1997); *Aetna Cas. & Sur. Co. v. McMichael,* 906 P.2d 92, 97 (Colo.1995); *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989); *Krieg v. Prudential Property & Cas. Ins. Co.,* 686 P.2d 1331, 1335 (Colo.1984). For example, we may consider the textual context, *Krieg,* 686 P.2d at 1335; the statute's legislative history; the state of the law prior to the legislative enactment, *Charnes v. Boom,* 766 P.2d 665, 667 (Colo. 1988); the problem addressed by the legislation; and the relationship between the particular legislation and other relevant legislative provisions in an effort to clarify the legislative intent. *See Colby,* 928 P.2d at 1302; *Rowe v. People,* 856 P.2d 486, 489 (Colo.1993); *Schubert v. People,* 698 P.2d 788, 793–94 (Colo.1985).

◼◼◼◼ If the language of a statute is reasonably susceptible to more than one meaning, courts should construe the language in light of the objective sought to be achieved. *See Denver Area Labor Fed'n, AFL–CIO v. Buckley,* 924 P.2d 524, 527 (Colo.1996). Moreover, a statute should be construed so as to give consistent, harmonious, and sensible effect to all of its parts. *See id.* "If separate clauses in the same statutory scheme may be harmonized by one construction, but would be antagonistic under a different construction, we should adopt that construction which results in harmony." *Mountain City Meat Co. v. Oqueda,* 919 P.2d 246, 253 (Colo.1996).

Thus, the first question we must address is whether the term "nonprivate passenger motor vehicle" is ambiguous within the context of the statute.

### B.

◼◼◼◼ As an initial matter, when the legislature defines a term in a statute, that definition governs. *See R.E.N. v. City of Colorado Springs,* 823 P.2d 1359, 1364 (Colo.1992) ("[T]o ignore a definition section is to refuse to give legal effect to a part of the statutory law of the state.") (quoting C. Dallas Sands, *Statutes and Statutory Construction* § 27.02 (4th ed. 1985)). Words and phrases with a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. *See* § 2–4–101, 1

C.R.S. (1997); *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1054 (Colo.1995). Such definition is applicable to the term wherever it appears in the statute, except where a contrary intention plainly appears. *See R.E.N.,* 823 P.2d at 1364; *Oliver v. City of Tulsa,* 654 P.2d 607, 611 (Okla.1982). Statutory definitions of words used elsewhere in the same statute furnish authoritative evidence of legislative intent. *See R.E.N.,* 823 P.2d at 1364; *Sierra Club v. Clark,* 755 F.2d 608, 613 (8th Cir.1985); *see also* Sands, *Statutes and Statutory Construction* § 27.02 (stating that such "internal legislative construction is of the highest value and prevails over ... other extrinsic aids"). "Only in the absence of express definitions will statutory terms be construed according to the various interpretive rules governing the construction of statutes." *Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237, 246 (Colo.1992).

Here, section 10–4–713(2)(c), 4A C.R.S. (1994), provides a particular definition of "private passenger motor vehicle." That definition is:

> an automobile of the private passenger, station wagon or camper type not used as a public or livery conveyance, unless such public or livery conveyance is regulated by the public utilities commission pursuant to article 10 of title 40, C.R.S., and is insured under a certificate of self-insurance pursuant to section 10–4–716, or an automobile of the panel delivery or truck type with a rated load capacity of one thousand five hundred pounds or less.

§ 10–4–713(2)(c), 4A C.R.S. (1994).

Clearly then, any reference to "private passenger motor vehicle" must conform to the statutory definition and leaves no room for ambiguity or argument. Our task is simply to determine whether the definition of the term applies throughout the section, even in the negative. We conclude that it does.

◼◼◼◼ The statutorily defined phrase is fully included within the phrase "*non* private passenger motor vehicle." Certainly if "private passenger motor vehicle" had been a term of art, with no meaning outside its statutory definition, then the negative refer-

ence would be defined wholly with reference to that term of art. Similarly, if a hyphen had followed "non" such that the term was non-private passenger motor vehicle, there would be no argument. We find it illogical to reach a different result because of the absence of a hyphen. We are required to incorporate, to the extent possible, the statutory definition in our construction of the language in a statute. *See R.E.N.*, 823 P.2d at 1364.

Thus, we conclude that the statute is not ambiguous, and that "non" modifies the defined term "private passenger motor vehicle" and encompasses all motor vehicles not included within that statutory definition.

## IV.

■ We note that we would reach the same conclusion even if the provision is viewed as ambiguous. In that event, we would look to legislative history to determine the intent of the General Assembly in enacting this provision of the No–Fault Act. *See General Elec. Co. v. Niemet*, 866 P.2d 1361, 1364 (Colo.1994).[3]

Here, that legislative history clearly indicates that the General Assembly's intention was to allow PIP providers to subrogate claims against commercial motor vehicle owners for benefits paid to insureds driving private passenger motor vehicles. *See* Hearings on H.B. 1027 Before the Senate Business Affairs and Labor Comm., 49th General Assembly, 1st Reg. Sess. (Feb. 21 and 28, 1973). The House Journal shows that the Committee on Business Affairs recommended adoption of the No–Fault bill with the following amendment:

> Notwithstanding the limitation in § 13–25–13(1) [now found at section 10–4–713(1)] upon an insurer's direct cause of action

against an alleged tort-feasor, where a motor vehicle accident involves a private passenger motor vehicle, the insurer of the private passenger motor vehicle shall have a direct cause of action for all benefits paid by such insurer under § 13–25–6(3) to (6) against the owner, user or operator of the non-private passenger motor vehicle, or against any person or organization legally responsible for the acts or omissions of such person. For the purposes of this subsection (2) a "private passenger motor vehicle" means an automobile of the private passenger, station wagon or camper type, not used as a *public or livery conveyance* or an automobile of the panel delivery or truck type with a rated load capacity of 1500 pounds or less.

House Journal, 49th General Assembly, 1st Reg. Sess., p. 134 (January 26, 1973).[4]

At the second reading of House Bill 1027 before the entire House, Representative Gustafson, one of the bill's primary sponsors, offered the following explanation of why his Committee added the above-quoted amendment to the draft bill:

> The effect of Amendment 8 [which contains the current section 10–4–713(2)] is to provide ... that subrogation between insurance companies can occur on two different bases. First of all, let me take section 2 of that [current section 10–4–713(2)]. This provides that any time a commercial vehicle is involved in an accident with a private passenger automobile, that to the extent the commercial vehicle is the cause of the damage ... that damage can be assessed against the insurer of the commercial vehicle. The reason for this is not to create a shift from the commercial vehicles to private passenger automobiles. There has been some concern that if we

---

**3.** In the event of ambiguity, it also is appropriate to look to industry practice. Since the No–Fault Act became effective, the insurance industry has generally interpreted subsection 713(2) to allow subrogation against commercial vehicles. No–Fault subrogation disputes are typically resolved through intercompany arbitration as provided under section 10–4–717, 3 C.R.S. (1997). The record in *Filippi* indicates that members of these arbitration panels consistently interpret the phrase nonprivate passenger motor vehicle to include all vehicles not falling within the defini-

tion of private passenger motor vehicle. *See also* Laugesen, *Colorado's No–Fault Insurance Law*, 3 Colo.L. 17, n. 18 (Apr. 1974) (defining nonprivate passenger motor vehicle as "any vehicle not within the definition of a private passenger motor vehicle").

**4.** We note that in the amendment recommended by the Committee, "non-private passenger motor vehicle" appears in hyphenated form.

bring commercial vehicles into the system and they're all on a no-fault basis, that at least a few would get some substantial windfall benefits if this were not allowed. And this is in order—the purpose of the second section of this is to try to be as certain as we can that commercial vehicles will not be able to shift some portion of their legitimate losses to the private passenger segment.

Proceedings of the House Committee of the Whole, 49th General Assembly, February 6, 1973 (audio tape A).

After the bill passed the House, Representative Gustafson testified before the Senate Business Affairs and Labor Committee. There, he explained the provision allowing subrogation as follows:

> We put the mechanism in here to prevent ... a premium shift from taking place. We give as a definition, including commercial vehicles, as being covered under this. But then we have provided to the extent that they are the at-fault driver, that if the commercial vehicle hits me that my insurer can claim against the insurer of the commercial vehicle ... for whatever medical costs they have paid on my behalf.

Hearings on H.B. 1027 Before the Senate Business Affairs and Labor Comm., 49th General Assembly, 1st Reg. Sess. (Feb. 21, 1973). Gustafson testified one week later before the same committee as follows:

> Now, on 13–25–13 [now § 10–4–713] ... is we think the mechanism that we've developed to preclude the two or three potential premium shifting items that are almost inherent in a no-fault bill. If you go to a pure no-fault system you have several shifts of losses that occur. A commercial vehicle typically being larger, doing more damage, you would tend to equalize rates between commercial and private passengers. We do have a mechanism, subrogation ... as against commercial vehicles.

Hearings on H.B. 1027 Before the Senate Business Affairs and Labor Comm., 49th General Assembly, 1st Reg. Sess. (Feb. 28, 1973).

The legislative history reflects that the General Assembly created two classes of vehicles for purposes of subrogation availability: commercial vehicles and private passenger cars. Although the No–Fault Act does not use the term "commercial" vehicle, the legislature clearly intended the phrase nonprivate passenger motor vehicle to be synonymous with commercial vehicle for purposes of section 10–4–713(2).

V.

Hence, we conclude that by incorporating the defined term "private passenger motor vehicle," into the portion of the statute dealing with a "nonprivate passenger motor vehicle," the General Assembly intended to create a dichotomy between private passenger motor vehicles and all other motor vehicles. Therefore, we affirm the judgment of the court of appeals in *Schneider*; reverse the court of appeals' decisions in *Mid–Century* and *American Family* and return the latter two cases with directions to remand for reinstatement of the district court orders. We also reverse the court of appeals' decision in *Farmers* and return the case with directions to remand to the district court for reinstatement of the action.