**MID–CENTURY INSURANCE COMPANY, Petitioner,**

v.

**The TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Respondent.**

**No. 98SC26.**

Supreme Court of Colorado, En Banc.

June 21, 1999.

Levy & Lambdin, Suzanne Lambdin, Stephanie A. Montague, Michael S. Power, Englewood, Colorado for Petitioner.

Clifton, Hook & Bovarnick, P.C., James R. Clifton, Harvey D. Flewelling, Denver, Colorado, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

Mid–Century Insurance Company (Mid–Century) appeals from the court of appeals judgment in *Travelers Indemnity Co. v. Mid–Century Insurance Co.*, 961 P.2d 509 (Colo.App.1997). The court of appeals affirmed the judgment of the District Court for the City and County of Denver (trial court) awarding treble damages to Travelers Indemnity Company of Illinois (Travelers) for Mid–Century's willful and wanton refusal to pay personal injury protection (PIP) benefits to Elizabeth Burns (Burns). Burns suffered injuries as a passenger in an automobile owned and operated by Mid–Century's named insured, Terry Murray (Murray).[1] The court of appeals held that Travelers, as equitable subrogee of Burns, could collect treble damages under section 10–4–708(1.8), in connection with obtaining reimbursement of the PIP payments it made to her after Mid–Century, the primary insurer, refused to pay them.[2]

---

1. We granted certiorari on the following issue:

   Whether the opinion issued by a panel of the court of appeals incorrectly found that the Travelers Indemnity Company has the right to recover, through its status as an equitable subrogee, sums in excess of those which it paid out on behalf of its insured, specifically, treble damages pursuant to section 10–4–708(1.8), 3 C.R.S. (1997).

2. Section 10–4–708(1.8), 3 C.R.S. (1998), provides in pertinent part that:

   [i]n the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the insured, in addition to

We conclude that Travelers may not retain the treble damages award as part of its equitable subrogation; this claim belongs to Burns. Because she was not a party to the litigation between the insurance carriers, we reverse and remand with directions that the trial court amend its judgment to delete the treble damages award to Travelers.

## I.

This case arises out of a dispute between Mid–Century and Travelers regarding payment of PIP benefits to Burns. On February 20, 1992, Murray, a Mid–Century insured, drove Burns, a Travelers insured, to work. Prior to reaching Burns' place of employment, Murray's car was involved in an accident that caused Burns to suffer bodily injuries. Burns submitted a claim for PIP benefits to Mid–Century. Mid–Century denied insurance coverage to Burns based on its position that Travelers was the primary insurer for her PIP benefits.[3] Burns subsequently filed a claim with the excess carrier, Travelers; Travelers reserved its subrogation rights while agreeing to pay Burns her PIP benefits due from Mid–Century.

Thereafter, Travelers filed a complaint against Mid–Century for a declaration that Mid–Century was the primary provider of PIP benefits for Burns and for reimburse-

ment of PIP benefits it paid to her. The trial court ordered the parties to refer their dispute to some form of alternative dispute resolution; they attempted mediation but did not resolve their differences. This litigation resumed.[4]

The trial court subsequently granted Travelers' motion for summary judgment, finding and concluding that Mid–Century was the primary insurer for Burns' PIP benefits. The trial court initially determined that the jury should decide the reasonableness and necessity of the PIP reimbursement amount claimed by Travelers. Prior to trial, Travelers amended its complaint to add a claim for recovery of treble damages, prejudgment interest, and attorneys fees, pursuant to section 10–4–708(1.8), claiming that Mid–Century willfully and wantonly failed to pay PIP benefits it owed to Burns. The trial court reconsidered its prior order for jury trial on the issue of reasonableness and necessity of the PIP reimbursement amount, granted summary judgment in favor of Travelers on that issue, and determined that the only issue remaining for trial was whether Mid–Century willfully and wantonly refused to pay PIP benefits to Burns for purposes of the statutory treble damages provision.

The trial court submitted to the jury a special interrogatory[5] to answer whether

---

any other amounts due to the insured under this subsection (1.8), an amount which is three times the amount of unpaid benefits recovered in the proceeding.

The current version of section 10–4–708(1.8) reads identically to the 1992 version of section 10–4–708(1.8), the governing statute at the time of the accident. Absent a change in language from the 1992 version of the Colorado Auto Accident Reparations Act, we cite to the 1998 version of the statute.

3. Mid–Century denied benefits to Burns on the basis that Burns and Murray were engaged in a ridesharing arrangement, requiring Burns' own insurer to pay the PIP benefits. Section 10–4–707.5, 3 C.R.S. (1998), defines "ridesharing arrangement" as "the vehicular transportation of passengers traveling together primarily to and from such passengers' places of business or work or traveling together on a regularly scheduled basis with a commonality of purpose." The trial court found that Burns and Murray were not engaged in a ridesharing arrangement. Burns and Murray worked at separate hospitals, and Burns only asked Murray for a ride to work that morning because her car was being repaired. Accordingly, the trial court found Mid–Century

to be responsible for the payment of Burns' PIP benefits.

4. The General Assembly amended section 10–4–708 in 1989 to mandate arbitration of all claims and disputes arising on or after July 1, 1989, and to examinations or treatment occurring on or after July 1, 1989. See ch. 82, secs. 2, 6, § 10–4–708, 1989 Colo. Sess. Laws 458, 458–61. In 1991, the General Assembly once again amended section 10–4–708 to allow insureds to elect whether or not to resolve disputes through binding arbitration. See ch. 203, § 10–4–708, 1991 Colo. Sess. Laws 1185, 1185–86. Because the accident in this case occurred in 1992, Travelers was not required to arbitrate its claim and could proceed directly to the trial court.

5. The special interrogatory submitted by the trial court to the jury provided as follows:

QUESTION: Were the actions of Mid–Century Insurance Company through its employees willful and wanton?
ANSWER:
     YES   **X**
     NO   _____

[All six jurors signed this special interrogatory.]

Mid–Century had willfully and wantonly refused to pay PIP benefits to Burns when due. The trial court's instruction read, in pertinent part:

> [T]here is only one issue which you, the jury, must decide, namely, whether the defendant's refusal to provide personal injury protection (PIP) benefits to Elizabeth Burns was a willful and wanton breach of contract, that is a breach of the contractual obligations which defendant had to Elizabeth Burns as a result of her being a passenger in Terry Murray's car.

The jury answered "yes" to this question.

Upon receiving the jury's verdict, the trial court entered judgment against Mid–Century in favor of Travelers for the PIP benefits paid by Travelers to Burns, interest on that amount at the eighteen percent statutory rate, costs, and treble damages under section 10–4–708(1.8).[6] It denied Travelers' motion for attorneys fees.[7]

Mid–Century appealed the treble damages award. The court of appeals held that Travelers, as equitable subrogee, was entitled to collect and retain statutory treble damages upon establishing that Mid–Century had willfully and wantonly refused to pay Burns her PIP benefits. *See Travelers Indem. Co. v. Mid–Century Ins. Co.*, 961 P.2d at 511.

Mid–Century, the primary insurer, contends that the common law governing equitable subrogation and the plain language of section 10–4–708(1.8) preclude Travelers, the excess insurer, from having the benefit of the treble damages award. We agree that nei-

ther the statute, nor the doctrine of equitable subrogation, entitles Travelers to have the benefit of the treble damages award.

## II.

We hold that a claim for treble damages under section 10–4–708(1.8) belongs to the person entitled to PIP coverage required of the primary insurer by Colorado's No–Fault Act. Burns was not a party to the litigation between Mid–Century and Travelers. Subrogation limits the excess carrier's recovery to that amount which makes it whole under 10–4–708, 3 C.R.S. (1998).

### A.

### *First Party PIP Coverage under the No–Fault Act*

In ascertaining who can receive treble damages under section 10–4–708(1.8), we first determine that Burns is a person to whom Mid–Century's primary coverage for PIP benefits extends. The Colorado Auto Accident Reparations Act, sections 10–4–701 to 726, 3 C.R.S. (1998) (No–Fault Act), "governs compensation, including medical and rehabilitation benefits, for personal injuries resulting from automobile accidents regardless of fault." *State Farm Mut. Auto. Ins. v. Peiffer*, 955 P.2d 1008, 1010 (Colo.1998).[8] A stated purpose of the No–Fault Act is to avoid inadequate compensation to victims of automobile accidents. *See* § 10–4–702, 3 C.R.S. (1998); *Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 468 (Colo.1998). It must be "liberally construed to further its

---

6. Statutory treble damages are calculated by taking the amount of benefits recovered, then multiplying that amount by three. See § 10–4–708(1.8). Treble damages awarded in this case amounted to $172,167.27.

7. Travelers did not appeal the trial court's order denying attorneys fees. We observe that the statute allows for the recovery of attorneys fees by a successful party if notice of the amount being sought is given to the other party twenty days before trial. See 10–4–708(1.7)(a), 3 C.R.S. (1998). In response to Travelers' post-trial attorneys fees motion, Mid–Century raised Travelers' non-compliance with the notice provision.

8. The No–Fault Act requires automobile owners to obtain automobile insurance that meets the minimum amount of coverage mandated by the No–Fault Act. *See Peiffer*, 955 P.2d at 1010. The insurers are required to pay reasonable and necessary medical expenses suffered by the insured in an automobile accident, regardless of whether or not the insured was to blame for the accident. *See id.* Furthermore, with the exception of limited statutorily enumerated circumstances articulated in section 10–4–714(1), the No–Fault Act prohibits a person injured in an automobile accident from filing a traditional tort action against the other person involved in the accident. *See id.*; § 10–4–714(1), 3 C.R.S. (1998).

remedial and beneficent purposes." *Peiffer,* 955 P.2d at 1011 (quoting *Regional Transp. Dist. v. Voss,* 890 P.2d 663, 669 (Colo.1995)). Accordingly, the owner of a motor vehicle is required to have a complying insurance policy that includes PIP protection for himself or herself, family members, passengers, and pedestrians involved in the accident. *See* § 10–4–705(1), –706(1)(b), –707(1), 3 C.R.S. (1998). "PIP" or "Personal Injury Protection" is defined as "direct or no fault benefit coverage." § 10–4–703(11), 3 C.R.S. (1998).

■ Murray was both owner and operator of the car in which Burns was injured. Burns, as an injured passenger, had PIP coverage from Mid–Century under Murray's policy. This relationship between the automobile owner and operator's insurer and the passenger injured in that automobile follows directly from the legislature's decision to replace parts of the common law tort liability system with minimum required no-fault insurance. *See Allstate Ins. Co. v. Avis,* 947 P.2d 341, 344 (Colo.1997); Committee on Automobile Insurance, Colorado Legislative Council, Report to the Colorado General Assembly, Res. Pub. No. 190 (1972) (Committee Report). First party coverage under the No–Fault Act includes medical benefits and is applicable to "the owner of the automobile, members of his family, the occupants of his automobile, and pedestrians in accidents involving his automobile." *See* Committee Report at 7; *accord* § 10–4–707(1). "If a passenger is covered by a policy other than the policy covering the vehicle in which he is injured, primary coverage would be afforded by the policy covering the vehicle." [9] Committee Report at 7.

■ Burns is Mid–Century's insured for purposes of a PIP reimbursement action under section 10–4–708; neither carrier contests this conclusion, which follows from the PIP coverage requirements of the statute and third party contract beneficiary principles. The statute and our cases demonstrate that the term "insured" must be viewed in the context of the provisions of the act in which it is used and construed to carry out the purposes and intent of the General Assembly. *See Gorman v. Tucker,* 961 P.2d 1126, 1128 (Colo.1998) ("A statute must be read and considered as a whole and should be construed to give consistent, harmonious, and sensible effect to all of its parts."). The Committee Report leading to the adoption of Colorado's No–Fault Act is clear that the legislature intended the direct benefit prompt recovery provisions of the No–Fault Act to apply to all persons entitled to PIP benefits. The No–Fault Act expressly provides treble damages for the injured insured against the primary carrier that willfully and wantonly refuses to pay PIP benefits to him or her when they are due. *See* § 10–4–708(1.8). Section 10–4–708(1.8) states that:

> The insurer shall pay interest to the insured on the benefits recovered at a rate of eighteen percent per annum, with interest commencing from the date the benefits recovered were due. In addition, in the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the insured, in addition to any other amounts due to the insured under this subsection (1.8), an amount which is three times the amount of unpaid benefits recovered in the proceeding.

■ We construe the term "insured" under section 10–4–708(1.8) to include all injured persons to whom primary coverage for PIP benefits extends. The General Assembly enacted the No–Fault Act for three primary purposes: (1) to ensure adequate compensation to victims of automobile accidents, *see* § 10–4–702, 3 C.R.S. (1998); *Bill Boom Inc.,* 961 P.2d at 468; (2) to ensure prompt payment of benefits when due, *see* § 10–4–708(1); and (3) to decrease the amount of litigation stemming from automobile accidents, *see Peiffer,* 955 P.2d at 1011. The treble damages award authorized by section 10–4–708(1.8) is not punitive in nature. It functions as a PIP coverage enforcement mechanism to "promote effective enforcement of the ordinance on behalf of [the con-

---

9. When the accident involves an operator of a motor vehicle who is not the owner or the employee of the owner of the vehicle, and the operator has a complying policy of insurance, the operator's policy is primary for payment of PIP benefits to all covered persons. See *Metropolitan Property and Cas. Ins. Co. v. Hertz Corp.,* 981 P.2d 1091, 1095 n. 1 (Colo.1999).

sumer]." *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 427 (Colo.1991) (quoting *Kelly v. Yee,* 213 Cal.App.3d 336, 261 Cal.Rptr. 568, 571 (1989)). Awarding treble damages to the accident victim who is wronged by the primary insurer's willful and wanton refusal to honor its PIP coverage vindicates the statute's compensatory purpose for the benefit of those wrongfully denied the mandatory statutory coverage.

## B.

### Subrogation

Mid–Century argues that the No–Fault Act and the doctrine of equitable subrogation do not allow the excess insurer to obtain the treble damages award for itself. We agree. Prior to 1991, section 10–4–708(1.8) instructed that the treble damages must be paid to the party bringing the lawsuit. *See* ch. 203, sec. 1, § 10–4–708(1.8), 1991 Colo. Sess. Laws 1187. Section 10–4–708(1.8) stated that: "[I]n the event of willful and wanton failure to the insurer to pay such benefits when due, *the insurer shall pay to the other party,* in addition to the other amounts due *to the other party* under this subsection (1), an amount which is three times the amount of unpaid benefits in controversy in the action." *Id.* (emphasis added). In 1991, the General Assembly deleted any reference "to the other party," amending section 10–4–708(1.8) to read: "[I]n the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the *insured,* in addition to any other amounts due to the *insured* under this subsection (1.8), an amount which is three times the amount of unpaid benefits recovered in the proceeding." *Id.* (emphasis added).

■ We must give effect to the wording and the purpose of a legislative enactment. *See Hall v. Walter,* 969 P.2d 224, 231 (Colo. 1998); *Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332, 1341 (Colo.1997). We do not presume that the General Assembly makes its deletions and substitutions of statutory language idly. *See Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 218 (Colo.1996); *Grover v. Industrial Comm'n,* 759 P.2d 705, 710 (Colo. 1988) (" 'The deletion of statutory language

by the legislature renders the language inoperative and indicates that the legislature has admitted a different intent.' ") (quoting *Deremer v. Workmen's Compensation Appeal Bd.,* 61 Pa.Cmwlth. 415, 433 A.2d 926, 928 (1981)). We interpret the General Assembly's deletion of the words "other party" and replacing them with "the insured" as precluding an excess carrier, acting as an equitable subrogee, from obtaining for itself the treble damages award. The claim for treble damages belongs to the person who was denied the required mandatory primary PIP coverage.

■ Subrogation is "a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." 16 George J. Couch, *Cyclopedia of Insurance Law* § 61:18 (Mark S. Rhodes ed., 2d ed.1983). Under equitable subrogation, a party secondarily liable who has paid the debt of the party who is primarily liable may institute a recovery action in order to be made whole. *See* Couch, *supra,* § 61:20. In *Trevino v. HHL Financial Services, Inc.,* 945 P.2d 1345, 1348 (Colo.1997), we characterized subrogation as

> a contractual or statutory right pursuant to which a portion of an injured plaintiff's rights against the tortfeasor responsible for the injuries are assigned to the subrogee. In the context of insurance, the subrogee/insurer pays for the insured's injuries or compensation at the outset and, as a result, succeeds to the insured's rights against the tortfeasor for reimbursement of the amount paid.

■ Mid–Century is correct in arguing that Travelers may not retain the treble damages award. Subrogation entails "the restoration of the amount paid by a surety or other similar person, and *restoration of that amount only."* Couch, *supra,* § 61:18 (emphasis added); *see also United Sec. Ins. Co. v. Sciarrota,* 885 P.2d 273, 277 (Colo.App. 1994) (quoting Couch for the same proposition). Subrogation's equitable nature prohib-

its the subrogee from receiving any windfall.[10]  *See* Couch, *supra,* § 61:18.

■ Mid–Century or Travelers could have joined Burns in the litigation between them under C.R.C.P. 19 or 20; if Burns had notice of the litigation, she could have moved to intervene under C.R.C.P. 24.  Combining subrogation recovery of PIP benefits with the insured's treble damages claim in a single lawsuit would carry out the No–Fault Act's purpose of decreasing the amount of tort litigation stemming from automobile accidents.  *See Peiffer,* 955 P.2d at 1011.  Under the No–Fault Act, the person owed the PIP benefits by the primary insurer may also maintain a separate action for the recovery of the treble damages if she or he is not a party to the action between the insurance carriers.[11]

### III.

■ Accordingly, we hold that an equitable subrogee may not obtain for itself the treble damages award.  This claim belongs to the person owed the PIP benefits by the primary insurer who willfully and wantonly failed to honor its PIP coverage.  We reverse the judgment of the court of appeals.  We remand with directions that the trial court amend its judgment to delete the treble damages award to Travelers.

Justice RICE does not participate.

---

10.  We do not address whether a claim for treble damages can be lawfully assigned to an insurer by its insured.  There is no evidence in the record that Burns assigned over her claim for treble damages to Travelers, and neither party contends on appeal that Burns contractually assigned her treble damages claim to Travelers.

11.  We do not determine whether Mid–Century would be collaterally estopped from relitigating its willful and wanton breach of contract should Burns bring suit against Mid–Century for the treble damages award.  See generally *Guaranty Nat'l Ins. Co. v. Williams,* 982 P.2d 306, 313 (Colo.1999)(articulating the standard for determining collateral estoppel).